[Civ. No. 15121. Third Dist. Feb. 20, 1976.]

WILLIAM ZISK et al., Plaintiffs and Appellants, v.
CITY OF ROSEVILLE, Defendant and Appellant.

COUNSEL

Desmond, Miller, Desmond & Bartholomew, Richard F. Desmond and Stephen James Wagner for Plaintiffs and Appellants.

Dennis W. DeCuir, City Attorney, G. Richard Brown and McDonough, Holland, Schwartz & Allen for Defendants and Appellants.

OPINION

**PARAS, J.**—Judgment was entered dismissing plaintiffs' complaint which alleged a first cause of action for inverse condemnation and a second cause of action for violation of the federal Civil Rights Act; this judgment was subsequently set aside; judgment was thereafter entered dismissing again the second cause of action and abating (by interlocutory judgment) the first cause of action (because of a prior condemnation action pending).

Plaintiffs appeal from the judgment of dismissal of the second cause of action. They contend that a cause of action was stated under the federal Civil Rights Act (42 U.S.C. §§ 1983 and/or 1985) because the city councilmen are not immune from liability thereunder and because the pleadings establish that the councilmen clearly violated established constitutional rights of plaintiffs.

Defendant City of Roseville (hereinafter "City") cross-appeals from the order setting aside the initial judgment of dismissal and from the later interlocutory judgment abating the first cause of action. The City contends: (1) that the trial court lacked authority to set aside the original judgment of dismissal in favor of City; and (2) that even if the court had such authority, it erred in later entering the abatement judgment.

According to the complaint, plaintiffs are the owners of real property in the City. The property consists of flat undeveloped land and includes a portion of Dry Creek. In March 1968, the City adopted a park and streambed element to its general plan, whose purpose was to preserve and enhance the natural resources of the community. The element stated that the streambed area of greatest acquisition priority for the City includes plaintiffs' property.

In March 1973, plaintiffs applied for a land use permit and lot split, for the purpose of constructing a single family residence adjacent to the streambed. The City's planning department determined that the proposed land use and lot split would have a "non-trivial effect" on the environment because the Dry Creek property was located in a flood-plain area and was included in the City's park and streambed plan for public use and development. Plaintiffs appealed this decision to the city council, which denied the appeal and determined that an environmental impact report should be prepared. Plaintiffs caused such a report to be prepared by an engineering firm, which found inter alia that the plaintiffs' proposed project would have no long range unavoidable adverse impact on the environment. In June 1973, the City adopted an open space and conservation element to its general plan, which called for the development of: (1) a trail system along streambeds and (2) park and recreational areas adjacent to streambeds.

In July 1973, plaintiffs applied again to the planning department for a land use permit and lot split; the application was denied. Plaintiffs appealed to the city council. The appeal was denied on October 3, 1973, because plaintiffs' proposed use conflicted with the City's tentatively approved bicycle and pedestrian trail system and because it was in derogation of the park and streambed element of the general plan. In denying the appeal the city council also gave notice of the City's intent to purchase a portion of plaintiffs' property along the Dry Creek streambed for the trail system.

Plaintiffs filed a petition for a writ of mandate to compel issuance of the land use permit. They also filed with the City a claim for damages for inverse condemnation, in which they sought compensation for all of their property, not just the streambed portion.

On November 28, 1973, the city council adopted two ordinances (1224 and 1227) which had the effect of rezoning plaintiffs' property from residential to permanent F W (Floodway) and F F (Floodway Fringe) combined zones. And on December 19, 1973, the city council adopted a condemnation resolution pertaining to the portion of plaintiffs' property adjacent to the streambed. The council also responded to plaintiffs' inverse condemnation claim by approving payment of the fair market value of the portion of the property being condemned and denying the claim relative to the remainder of the property.

On December 20, 1973, the City filed its suit in eminent domain (Placer County No. 41104). This suit rendered the mandate proceeding moot. Later that day plaintiffs filed the subject complaint in inverse condemnation, naming as defendants the City and each of its five councilmen. (Placer County No. 41105). The complaint originally contained a cause of action for inverse condemnation and a second cause of action for a de facto taking of plaintiffs' property when it was rezoned from residential to floodway and floodway fringe. Plaintiffs later amended by combining the initial two causes of action and adding as a separate cause of action the alleged violation of the federal Civil Rights Act.

Defendants demurred to the amended complaint. The trial judge ruled on the demurrers and sustained them without leave to amend. Counsel for defendants prepared a formal judgment which the judge signed, stating only that "judgment be entered in favor of Defendant CITY OF ROSEVILLE." Nothing was mentioned as to the individual defendants, even though the judge had sustained the demurrers of all defendants. Plaintiffs filed notice of appeal. On his own motion, the judge thereafter filed a minute order setting a hearing to determine whether the judgment which he signed should be corrected to conform to his prior ruling. He also signed an order allowing plaintiffs to dismiss their appeal without prejudice to a later appeal; plaintiffs then abandoned the appeal and moved to set aside the judgment on the grounds that it was void on its face and entered without proper notice.

The judge then made the order setting aside the earlier judgment of dismissal because it was (1) contrary to the law, (2) void, (3) contrary to his prior ruling, and (4) incomplete; he also made an order that judgment of dismissal be entered in favor of the five individually named defendants. Finally, he ordered that all proceedings relating to plaintiffs' alleged cause of action in inverse condemnation be stayed until a final determination of the prior action pending (the condemnation action).

This appeal and cross-appeal followed.

## I

### THE CROSS-APPEAL

#### A.

The City initially argues that the judge had no authority to vacate the original judgment of dismissal for the reason that the

judgment was not void on its face and was entered properly, even though no notice of motion to enter it was filed. This initial contention is valid. ■ After a demurrer is sustained without leave to amend, no formal motion to dismiss is necessary; the entry of judgment of dismissal follows as a matter of course. (*Berri* v. *Superior Court* (1955) 43 Cal.2d 856, 860 [279 P.2d 8].) ■ However, the judge had the authority to set aside the judgment because it contained clerical errors, not judicial errors as claimed by the City. (*Bastajian* v. *Brown* (1941) 19 Cal.2d 209, 214 [120 P.2d 9]; see *In re Candelario* (1970) 3 Cal.3d 702, 705 [91 Cal.Rptr. 497, 477 P.2d 729].) In his order vacating the original judgment, the judge described it as "being contrary to the prior decision of this court and being incomplete." Where the judgment as signed does not express the actual judicial intention of the court, but is contrary thereto, the signing of such a purported judgment is a clerical error rather than a judicial one. (*Bastajian* v. *Brown, supra,* 19 Cal.2d at p. 216; see also *Martin* v. *Ray* (1946) 74 Cal.App.2d 922, 928 [170 P.2d 75].)

The City's attorney who drafted the judgment failed to include in it that the demurrer of the individually named defendants had been sustained and that judgment was in their favor as well as the City's. This was clearly contrary to the judge's prior ruling on the demurrers, and demonstrates beyond doubt that the error was clerical (see *Russell* v. *Superior Court* (1967) 252 Cal.App.2d 1, 8 [59 Cal.Rptr. 891] [mistake of attorney draftsman deemed clerical error]; *Estate of Goldberg* (1938) 10 Cal.2d 709, 714 [76 P.2d 508] [omission of a party's name deemed clerical error]).

No express statutory authority exists which allows a judge, on the motion of an aggrieved party, *to set aside* a judgment procured as a result of clerical error. Section 473 of the Code of Civil Procedure states that the court may, on the motion of the injured party or its own motion, *correct* clerical mistakes in its judgment or order as entered, so as to conform to the actual judgment or order directed. Considered realistically however, the procedure followed here did not void the judgment but in actuality corrected it. Moreover, the judge's action was proper because a trial court has *inherent* power to annul judgments inadvertently or improvidently made. (*Bastajian* v. *Brown, supra,* 19 Cal.2d at p. 214.)

## B.

■ The interlocutory judgment abating proceedings on the first cause of action is not appealable. (Code Civ. Proc., § 904.1; 6 Witkin,

Cal. Procedure (2d ed. 1971) Appeal, § 54, p. 4069.) Section 597 of the Code of Civil Procedure provides that where a trial is held relative to special issues and defenses, an interlocutory judgment sustaining the defense of another action pending is then appealable. Here, although the City raised the prior action pending as one of its grounds of demurrer, no special trial was held on this issue and section 597 is inapplicable.

Proceeding nonetheless to review the contention on the merits, we find it without substance. The City claims that the first cause of action should have been dismissed, not abated. It contends that an interlocutory judgment abating proceedings presumes a valid cause of action (which it asserts is not stated) which must await resolution of a prior action. This is inaccurate. ■ The purpose of an interlocutory judgment, where the defense of another action pending is sustained, is to permit the trial court to retain jurisdiction over the subsequent action (*Lord* v. *Garland* (1946) 27 Cal.2d 840, 851 [168 P.2d 5]); the plea in abatement does not go to the merits of the cause of action at all. (See *Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399, 406 [154 P.2d 399].)

Alternatively, the City argues that the interlocutory judgment is improper because plaintiffs' proper remedy is via a petition for writ of mandamus. This contention too is without merit. Mandamus will not lie if there is another action pending involving the same issues. (*Keyston* v. *Banta-Carbona Irr. Dist.* (1937) 19 Cal.App.2d 384, 386 [65 P.2d 371].) In the present case, the City's pending action in eminent domain deals with the same issues as the first cause of action and as would be involved in a writ based on inverse condemnation. If the eminent domain proceeding is carried through to a dispositive conclusion, the abatement will become permanent. If for any reason the eminent domain action aborts, the first cause of action will become viable.

## II

### THE APPEAL

### A.

Plaintiffs' appeal is limited to the contention that a cause of action has been adequately stated under both 42 United States Code section 1983 and 42 United States Code section 1985.[1] We disagree.

---

[1] 48 United States Code section 1983 reads in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, sub-

■ No cause of action can be stated against the City of Roseville because a municipal corporation such as the City of Roseville is not a "person" subject to suit under either statute. (*Monroe* v. *Pape* (1961) 365 U.S. 167, 191 [5 L.Ed.2d 492, 81 S.Ct. 473]; *Bosely* v. *City of Euclid* (6th Cir. 1974) 496 F.2d 193, 195; *Arunga* v. *Weldon* (9th Cir. 1972) 469 F.2d 675, 676.) The actions of the planning commission therefore, although attributable to the City, cannot bring about a civil rights cause of action against the City. Nor can such acts of the planning commission be attributed to the city councilmen individually.

■ As to the councilmen, plaintiffs contend that a cause of action was stated because the pleaded facts show that the councilmen disregarded plaintiffs' clearly established constitutional rights when they "singled out" plaintiffs' property and restricted its use harshly and arbitrarily. We conclude, however, that the pleadings fail to disclose a deprivation of any constitutional right by the councilmen (they accorded plaintiffs the constitutional right to fair compensation for property condemned). When the city council adopted Ordinances 1224 and 1227 which regulated land uses within flood-prone areas and rezoned certain lands surrounding streambeds, plaintiffs' land was not singled out for abuse; on the contrary, all lands similarly situated were rezoned. Thus these flood plain ordinances were neither vague nor arbitrary, nor an improper exercise of the city council's police power; rather, they were adopted as a proper regulation of land use and were a permissible exercise of that power. (*Morse* v. *County of San Luis Obispo* (1967) 247 Cal.App.2d 600, 603 [55 Cal.Rptr. 710]; *Metro Realty* v. *County of El Dorado* (1963) 222 Cal.App.2d 508, 515-516 [35 Cal.Rptr. 480].)

---

jects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Section 1985 reads in pertinent part as follows: "Third. If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

## B.

█ The trial judge determined that the city councilmen were immune from liability in the exercise of their power to condemn property for a public use. This was a correct determination and is itself a proper ground for dismissing the complaint. (*Rhodes* v. *Meyer* (1964) 334 F.2d 709, 718, involving judicial immunity; see also, *Safeguard Mutual Insurance Co.* v. *Miller* (3d Cir. 1973) 472 F.2d 732, 733.)

Plaintiffs contend that the city councilmen are not absolutely immune from liability under the Civil Rights Act and attempt to show that the United States Supreme Court has established a new standard to measure the immunity of city councilmen which permits their immunity only if their actions can reasonably be characterized as being in good faith. They argue that the actions of the councilmen here do not meet this good-faith test.

It is indeed true that members of a legislative body such as a city council do not have absolute immunity under the federal Civil Rights Act. (*Nelson* v. *Knox* (6th Cir. 1958) 256 F.2d 312, 314.) Their immunity is qualified by the necessity of acting in good faith in the performance of their duties. (*Id.,* at p. 315.)

In 1974, the United States Supreme Court decided the case of *Scheuer* v. *Rhodes,* 416 U.S. 232 [40 L.Ed.2d 90, 94 S.Ct. 1683], in which the chief executive officer of a state, the senior and subordinate officers of the state's national guard, and the president of a state-controlled university were accused of violating section 1983. The court found them immune from liability, stating: "[I]n varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct." (*Scheuer* v. *Rhodes, supra,* p. 247 [40 L.Ed.2d, p. 103].)[2]

---

[2]The Court recently extended this qualified immunity to members of a school board. (*Wood* v. *Strickland* (1975) 420 U.S. 308, 321-324 [43 L.Ed.2d 214, 95 S.Ct. 992].)

Disregarding the conclusionary allegations, and looking to the factual allegations in support thereof, we find that the complaint shows that the councilmen acted in such a way as to meet this standard of immunity.[3] The park and streambed plan was adopted five years before plaintiffs applied for their first land use permit. Plaintiffs' property was of prime interest to the City because it was as yet undeveloped and would be reasonably available to meet the City's growing need for park land and open space. Plaintiffs' intention to build a structure adjacent to Dry Creek was in diametric opposition to the council's desires to preserve open space, insure the preservation of park sites, and enhance the natural resources of the community. Thus the councilmen's actions in denying on appeal plaintiffs' requests for a land use permit and lot split were taken with a view toward protecting the interests of the entire citizenry of the City of Roseville. This is not bad faith.

The judgment is affirmed. Respondent and cross-appellant shall recover costs on appeal.

Janes, Acting P. J., and Evans, J., concurred.

The petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied April 22, 1976.

---

[3]The federal standard of immunity is applicable here because state courts dealing with actions under a federal statute may not use a state rule of practice or procedure to defeat the federal right. (See *Brown* v. *Western R. of Alabama* (1949) 338 U.S. 294, 296 [94 L.Ed. 100, 102-103, 70 S.Ct. 105]; but see *King* v. *Schumacher* (1939) 32 Cal.App.2d 172, 182-183 [89 P.2d 466].) Had the California standard of immunity been used, a similar result would have ensued however. (Gov. Code, § 821, 821.2; *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 127 [109 Cal.Rptr. 799, 514 P.2d 111].)