[Civ. No. 36333. First Dist., Div. One. Mar. 5, 1976.]

BEELINE FASHIONS, INC., Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

390

**COUNSEL**

Stark, Stewart, Simon & Sparrowe, Belzer & Jackl and V. James Jackl for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Philip M. Plant, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**ELKINGTON, J.**—Beeline Fashions, Inc. ("Beeline") is an Illinois corporation engaged in the business of manufacturing and selling women's ready-to-wear apparel. It markets such clothing throughout the United States, and is registered as a retailer in California. Full-time employees of Beeline, called "managers," recruit and contract for the

services of "stylists." These stylists, in turn, organize "home fashion parties" by recruiting housewives to act as "hostesses." The hostess customarily invites her friends and neighbors to a home fashion party conducted by the stylist. At the party Beeline's clothing samples are modeled and the stylist solicits orders. The stylist collects the individual order forms, "consolidates" them, and forwards the consolidated orders to Beeline in Illinois. Customarily the purchasers pay the hostess the charges for their orders within two or three weeks after the party. Beeline packages each purchaser's order separately, enclosing all such packages resulting from one home fashion party in a larger package. The larger parcel is then shipped to the hostess from Illinois by United States mail, C.O.D. Upon receipt of the shipment, the hostess pays the postman and delivers the merchandise to the purchasers.

The stylist enters into an agreement with Beeline which, in part, states: "I understand that I am in business for myself, independently trading with consumers, as a retailer of merchandise. I purchase at wholesale from the company who ships the merchandise in accordance with my instructions. I am not an employee of the company." For her services she receives a 25 percent commission on the orders placed through her efforts.

It will be seen that after the fashion party held in her home, the hostess is required to collect the amounts due on the orders placed, and thereafter remit such sums to Beeline through the postal service. She also is charged with the responsibility of delivering the ordered merchandise to the several purchasers. The compensation for the hostess' services is perhaps best shown by the "Beeline Hostess Kit" with which she is furnished:

"Beeline Hostess Awards

"A Hostess is richly rewarded for her part in having a Beeline Style Show. She is not limited to one or two items as her Free Gift. Literally, she has over a hundred different styles of clothing to choose from besides a variety of household items. Her gift might be a wardrobe of clothing for herself and family, or she might choose a combination of apparel and household gifts.

"Beeline 'Package Plan'

"A very special Gift Allowance is given to Hostesses whose Style Shows total $80 or more, With 2 Bookings.

"For Sales Of:

$80 to $99 and 2 Bookings....Hostess Receives $15 Credit

$100 to $120 and 2 Bookings..Hostess Receives $18 Credit

"Over $120 And More Than Two Bookings

Hostess receives additional gifts of $1.00 credit for each $10.00 in sales over $120. Also, $1.50 credit for each booking over two.

"Beeline Regular Awards

"Each hostess earns a credit of 10% of her total show sales, plus earning $1.50 in merchandise for each future show booked from hers.

"Absentee Orders, Too

"A hostess will receive 10% of absentee orders, too—an absentee order being an order from a customer who cannot attend this showing. Many hostesses greatly increase their awards with absentee orders.

"Bookings Valuable

"Many times a hostess can earn $6.00 or more free clothing on her booking awards alone—having other friends who will agree to a showing within their home."

The action below, and this appeal, concern Beeline's "delivery fee." This fee of $.25 is added to the amount of each purchaser's order. It is part of the charge collected by the hostess and forwarded by her to Beeline. Such a fee is not more than the average amount of postage expended in the shipping of each purchaser's order. Over the period October 1, 1964, to March 31, 1968, Beeline collected and paid to the Board, "use taxes" on the amount of each purchaser's order, but did not pay such a tax on the $.25 delivery fee collected on each such order. The respondent California State Board of Equalization (hereafter the "Board") assessed a use tax against the collected delivery fees which, with interest and penalties, came to $28,449.40. The tax, as assessed, was paid under protest by Beeline, and this action was brought for its recovery.

The superior court adjudged that Beeline take nothing by its action, and this appeal followed.

■ Beeline's first contention on its appeal is that: "The 'delivery fees' were not subject to the use tax."

During the period here at issue the "use" taxability of transportation charges, or "delivery fees," was governed by Revenue and Taxation Code section 6011, as implemented by the Board's Ruling No. 58, then found in California Administrative Code, title 18, section 2028.

California's "use tax" is based upon the "sales price" of the assessed personal property.

Revenue and Taxation Code section 6011 (since amended), as relevant, provided: " 'Sales price' means the total amount for which tangible personal property is sold . . . valued in money, whether paid in money or otherwise, without any deduction on account of any of the following: . . . (c) The cost of transportation of the property, except as excluded by other provisions of this section . . . . 'Sales price' *does not include* any of the following: . . .(g) *Separately stated charges for transportation from the retailer's place of business or other point from which shipment is made directly to the purchaser,* but the exclusion shall not exceed a reasonable charge for transportation by facilities of the retailer or the cost to the retailer of transportation by other than facilities of the retailer; . . ." (Italics added.)

This statute must reasonably be construed, as it was by the Board, *not* to exclude from the "sales price" separately stated charges for transportation between different geographical locations or instrumentalities of the retailer, before final delivery of the merchandise to the purchaser. The construction may be illustrated by a situation where the ordered goods are shipped from the retailer's factory or warehouse or other facility to its local retail outlet for delivery thereafter to the purchaser; separately stated charges for transportation to the local outlet would be part of the "sales price," while such charges, if any, for the final delivery thereafter to the purchaser, would not.

The immediate question is whether Beeline's separately stated "delivery fee" was a charge for transportation "directly to the purchaser."

Section 6011 in the instant context is a tax exemption statute. ■ We are accordingly bound by the rule that " 'exemptions from taxation are to be strictly construed against the taxpayer.' " (See *Santa Fe Transp.* v. *State Board of Equal.,* 51 Cal.2d 531, 539 [334 P.2d 907].)

■ It will be recalled that the consolidated orders previously received from the stylist by Beeline are shipped in one container *to the hostess* who after paying the C.O.D. charges unpacks it and delivers the smaller packages to the individual purchasers. In this factual context delivery to the hostess may not reasonably be deemed a shipment made "directly to the purchaser." Instead, she is a representative of Beeline charged with the duty of collecting and forwarding the sums due from the purchasers, and to make the final delivery of the merchandise "directly to the purchasers." This function appears to be an essential element of Beeline's business operation, for through the hostess, collection of the charges and their remission to Beeline is assured before the goods are delivered to the purchaser. And for this, as well as her other services, she is compensated by Beeline.

It follows that the delivery here at issue, i.e., Beeline's United States mail transmission to the hostess, is but a delivery to its representative in California, who in turn makes the final "delivery to the purchaser." Under the strict terms of the statute the delivery fee is part of the "sales price," and subject to the state's use tax.

It is notable that where the hostess has herself placed an order with Beeline, the applicable delivery fee is not subjected to the use tax by the Board, since in that case the delivery is directly to her.

Beeline appears to rely principally upon the Board's above-mentioned Ruling No. 58, found at the pertinent times in title 18, section 2028 of the state's Administrative Code. The ruling declared: "(a) Delivery by Carrier. Tax does not apply to separately stated charges for transportation of property from the retailer's place of business or other point from which shipment is made *directly to a place specified by the purchaser,* provided the transportation is by other than facilities of the retailer, i.e., independent contract or common carrier, United States mail. The place where title passes to the customer is immaterial, except when the property is sold for a delivered price, as explained in (c) below. The charges may not, however, exceed the cost to the retailer of the transportation. Any amount billed to the customer in excess of such cost

cannot be excluded from the measure of the tax as a delivery charge. . . ." (Italics added.)

The Board construed the here-emphasized language of its ruling, as it did Revenue and Taxation Code section 6011, to mean "directly to the purchaser" or its reasonable equivalent, some place specially designated by her, but not to someone acting primarily in the retailer's behalf for delivery to the purchaser.

We opine that the Board's interpretation is not only reasonable, but it is mandated by the statute (Rev. & Tax. Code, § 6011) which it purports to implement. Any ruling that the delivery fee would be exempt from taxation even though the delivery was not made "directly to the purchaser," would be contrary to the statute, and accordingly void. ■ " 'Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations.' " (*Cooper* v. *Swoap*, 11 Cal.3d 856, 864 [115 Cal.Rptr. 1, 524 P.2d 97] [cert. den., 419 U.S. 1022 [42 L.Ed.2d 296, 95 S.Ct. 498]].) ■ And as with statutes we are reasonably required, where possible, to construe administrative regulations in such a manner as to render them valid. (*Erlich* v. *Municipal Court*, 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334]; *Cal. Drive-in Restaurant Assn.* v. *Clark*, 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028].)

■ We accordingly conclude that Beeline's delivery fees, here at issue, were subject to the state's use tax.

■ Beeline's remaining contention is that it was but the state's collection agent for the subject use tax; and not having "defaulted" in following the Board's instructions relating thereto, it may not now be held liable for the tax. The contention arises from an exchange of letters between Beeline and the Board.

Responding to Beeline's letter of September 21, 1965, the Board on October 21, 1965, stated: "You are correct that it is possible to regard your shipments as shipments to your customer ('hostess') under the theory that they are acting on behalf of the other customers and not acting as your agent. Therefore, under the facts before us, we can agree with you that the shipments are not to your representatives, but to your customers." (The letter then pointed out that for another reason, apparently later found erroneous, use taxes on the disputed delivery fees were nevertheless payable.)

However, March 17, 1966, the Board again wrote Beeline, stating:

"In reviewing the file of Beeline Fashions, Inc., our petitions staff has noted an additional point which merits review.

"In my October 21, 1965, letter to Beeline, in the second paragraph, I agreed that under the facts then appearing, we could agree that the transportation to the 'hostess' could be considered transportation to the customer, and accordingly, the final transportation to the customer. The file and the audit papers do not contain any information to indicate that the hostess is treated any differently from the other customers by Beeline except that she receives all the merchandise ordered and pays for it, reimbursing herself from the others.

"*In other cases in which a person analogous to Beeline's 'hostess' has demonstrated closer relations with the retailer, we have ruled that she is a representative of the retailer. Therefore, the shipment to her was not the final transportation to the customer, and for that reason alone, the charge for that transportation could not have been excluded from gross receipts.*

"We would like to explore all relevant facts on the relationship of the 'hostess' to Beeline. We would appreciate receiving any evidence you would care to submit on this point so it could be properly reviewed and evaluated before the hearing." (Italics added.)

We observe that in its first letter the Board made clear that its conclusion was based upon the "facts before us." It does not appear what facts were then before the Board. Indeed, it appears that the above-quoted information of the "Beeline Hostess Kit" was not before the Board at that time, for in a later factual stipulation of the parties that information went unnoted.

The March 17, 1966, letter indicated that the "file and the audit papers" had added further information to the "facts then [October 21, 1965] appearing," compelling a contrary conclusion. And no response appears to have been made to that letter's request for further evidence "you would care to submit on this point."

We note further from the letters that, at most, Beeline's period of "non-default" on the Board's instructions was less than five months of the three and a half years at issue. No evidence was introduced establishing what amount of delivery fees, if any, were charged or

collected during that period. The record does not establish any superior court contention that Beeline was entitled, in any event, to a lesser refund of the taxes paid under protest; nor is such a contention made to this court.

As to the instant contention also, error is not shown.

The foregoing conclusions have made it unnecessary to consider additional points raised by the parties in their briefs.

The judgment is affirmed.

Molinari, P. J., and Weinberger, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 19, 1976.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.