[Civ. No. 50767. First Dist., Div. Three. Oct. 27, 1982.]

WALLACE K. SHEPHERD, Plaintiff and Appellant, v.
ROGERS JONES et al., Defendants and Respondents.

**COUNSEL**

Campbell, Warburton, Britton, Fitzsimmons & Smith and C. Michael Smith for Plaintiff and Appellant.

Douglas J. Maloney, County Counsel, Allen A. Haim, Chief Deputy County Counsel, and Patrick K. Faulkner, Deputy County Counsel, for Defendants and Respondents.

OPINION

**BARRY-DEAL, J.**—Wallace Shepherd brought this action for damages under the federal Civil Rights Act of 1871 (42 U.S.C. §§ 1983, 1985(3)[1]) against respondents, citizen members of the Board of Commissioners of the Marin County Housing Authority (Housing Authority). He claimed that his discharge from his position as executive director of the Housing Authority without first receiving notice of the charges against him or an opportunity to be heard violated his constitutional right to procedural due process. He also alleged that respondents conspired to violate his constitutional rights. Respondents, Rogers Jones, Philip S. Ehrlich, Jr., Myrna Bergerson, and Leatrice Mikkelsen, voted to remove appellant from his post as executive director on the grounds of incompetence, disobedience, and mismanagement. Respondents' motion for summary judgment was granted as to Shepherd's first cause of action. Shepherd subsequently entered into a stipulation sustaining a demurrer to his second cause of action. The trial court entered a final judgment granting the summary judgment and dismissing the second cause of action. Shepherd appeals from this judgment. For the reasons discussed below, we affirm the judgment.

In the first cause of action under 42 United States Code section 1983, appellant alleged (a) that he had a constitutionally protected right in his position as executive director from which he could not be terminated without first receiving written notice of the charges against him and a public hearing; and (b) that statements made by respondents in connection with his dismissal infringed his constitutionally protected liberty interest, which entitled him to a public hearing to clear his name.

---

[1] 42 United States Code section 1983 provides as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

42 United States Code section 1985(3) provides, in pertinent part: "(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

 [redacted] In the second cause of action, appellant alleged that by the foregoing actions respondents conspired to deprive him of his constitutional rights under 42 United States Code section 1985(3).[2]

In granting respondents' motion for summary judgment as to the first cause of action, the trial court concluded (1) that since appellant served at the pleasure of the Housing Authority he could be terminated at any time with or without cause, and he therefore was not entitled to a pretermination hearing; (2) that respondents were entitled to good faith immunity from liability; and (3) that respondents' remarks and criticisms did not stigmatize appellant so as to warrant a hearing to clear his name.

[redacted] At the same time the trial court granted respondents' motion for judgment on the pleadings as to the conspiracy cause of action, granting appellant 15 days' leave to amend this portion of the complaint.[3]

Appellant filed a timely first amended complaint in which he realleged the conspiracy count. The parties subsequently entered into a stipulation to sustain respondents' demurrer to the first amended complaint.

In this appeal appellant contends (1) that the trial court erred as a matter of law in concluding that he had no constitutionally protected property interest in his position as executive director, (2) that the trial court erred in

[2]State courts have concurrent jurisdiction over the federally created cause of action involved herein. (*Williams* v. *Horvath* (1976) 16 Cal.3d 834, 837 [129 Cal.Rptr. 453, 548 P.2d 1125].)

[3]The record demonstrates that appellant's second cause of action for conspiracy was based entirely upon the claimed due process violations alleged in the first cause of action. As such it would also have been proper for the trial court to have granted summary judgment as to the second cause of action as pleaded in the original complaint. Appellant virtually conceded this point when he entered into the stipulation sustaining respondents' demurrer to the conspiracy count pleaded anew in the first amended complaint.

However, it appears likely that the trial court granted appellant leave to amend the conspiracy count because he believed that appellant could state a cause of action for conspiracy to violate his rights under the equal protection clause of the Fourteenth Amendment to the United States Constitution, rather than under the due process clause, as originally pleaded. That this was the probable motive behind the trial court's order is supported by the decisional law, which has interpreted 42 United States Code section 1985 (3) not to apply to alleged due process violations. (*Taylor* v. *Mitzel* (1978) 82 Cal.App.3d 665, 674-675 [147 Cal.Rptr. 323].)

That the trial court misunderstood the focus of appellant's conspiracy cause of action is understandable in light of appellant's allegation charging both due process and equal protection violations from respondents' refusal to grant him a pretermination hearing. In any event, the record reveals that appellant also failed to state a cause of action for violation of his equal protection rights. Appellant did not allege that respondents harbored the class-based animus necessary to a claimed equal protection violation. (See *Griffin* v. *Breckenridge* (1971) 403 U.S. 88, 97 [29 L.Ed.2d 338, 345, 91 S.Ct. 1790].)

finding that respondents were entitled to good-faith immunity, and (3) that his first amended complaint stated sufficient facts to constitute a cause of action for conspiracy to violate appellant's procedural due process rights.

■ ■■■ The facts are not in material dispute.[4] On December 8, 1970, the commissioners of the Housing Authority confirmed appellant's appointment as executive director. At approximately the same time appellant was confirmed as executive director of the Marin County Redevelopment Agency (Redevelopment Agency). The Housing Authority and the Redevelopment Agency were each governed by a board of seven commissioners. The Housing Authority is a state agency funded by the federal government to provide low income housing for qualified persons in the county. As its executive director, appellant was primarily responsible for implementing the policies and programs developed by the board of commissioners of the Housing Authority.

Subsequently appellant proposed a change in the Housing Authority's personnel policy under which he was hired, to provide that: "6. . . . The Executive Director is appointed by, and serves at the pleasure of the joint Board of Commissioners."[5] The proposed revision was adopted.

On June 25, 1974, respondents and other Housing Authority commissioners met in executive session to discuss their dissatisfaction with appellant's job performance. Appellant's requests to attend the meeting and/or to have the meeting transcribed were denied. The meeting was adjourned with no action being taken on the question of appellant's continued employment.

In a letter dated June 26, 1974, respondent Ehrlich advised Board Chairman Harold Strouss that at the next regular meeting he intended to propose a revision of the personnel policy to eliminate the requirement that "joint" approval of both boards was necessary before appellant could be dismissed.

On July 18 and 24, 1974, the commissioners for both the Housing Authority and the Redevelopment Agency held public meetings to discuss the proposed revision to the personnel policy and to hear complaints about

---

[4]We recognize that upon review of a motion for summary judgment all questions of disputed fact are to be resolved in favor of appellant, while respondents' declarations are to be strictly construed. (*Branden* v. *Belcher* (1977) 67 Cal.App.3d 997, 999 [134 Cal.Rptr. 1].)

[5]It appears that the prior personnel policy did not provide for *joint* approval of both boards of the Housing Authority and the Redevelopment Agency.

appellant's performance. At both meetings, Housing Authority Counsel Albert Bianchi advised the members that as autonomous agencies, and in the absence of a joint powers agreement, either entity could independently act to terminate appellant as its executive director. Counsel for the Redevelopment Agency, William Hochman, concurred in Bianchi's opinion.[6] No vote was taken at this time.

On August 13, 1974, the commissioners of the Housing Authority convened a special meeting to vote on appellant's continued employment. The public was also invited to attend. However, appellant indicated that he would not attend the meeting. Respondent Ehrlich and, to a lesser extent, respondent Bergerson expressed their views on appellant's job performance, including strengths as well as weaknesses.

Ehrlich stated that appellant "never recognized who was in charge"; that he "ignored . . . or subverted" policy with which he did not agree; that ". . . there was deception, failure to disclose, misrepresentation in the relationship with the Board that made it impossible for me, as a Board member, to know what was going on; . . ." that appellant was responsible for a "total breakdown of communications" with the board; that appellant "generated strong antagonisms" among the board members; that appellant was inadequate "in many areas of administration"; that appellant exhibited "an arrogance in dealing with the problems of our low income tenants";[7] and that in his 16 years of government service he "never dealt with any public official who I felt communicated less effectively with a board in making clear to the board what the problems of the agency were, . . . "

Respondent Bergerson remarked that appellant "wants a one-man show . . . ," that he does not allow contracts to be fulfilled, that "[h]e hides things from us and . . . he just goes his own way . . . ."

Respondents Jones and Mikkelsen did not comment at this time, but were content to stand on comments they made at earlier meetings.

All respondents voted to dismiss appellant. Local newspapers reported on the running dispute between appellant and respondents, as well as appellant's ultimate termination. Several of these newspapers also reiterated the remarks made by Ehrlich and Bergerson.

---

[6]The combined boards also received an opinion from Attorney Benjamin James, who had represented the Housing Authority in previous litigation. James opined that termination of executive director required joint action of both boards.

[7]Appellant admitted in a deposition that he relied primarily on these remarks to support his claim for a hearing to clear his name.

Appellant remained in his post as executive director of the Redevelopment Agency for approximately six months following his termination from the Housing Authority. In November 1978 appellant was hired by the federal Department of Housing and Urban Development.

I. *Appellant has no constitutionally protected property right to continued employment as executive director.*

■ In order to maintain a cause of action under 42 United States Code section 1983, appellant must establish that (a) respondents acted under color of state law, and (b) that this conduct deprived him of a right secured by the federal Constitution. (See *Parratt* v. *Taylor* (1981) 451 U.S. 527, 535 [68 L.Ed.2d 420, 428, 101 S.Ct. 1928]; *Rossiter* v. *Benoit* (1979) 88 Cal.App.3d 706, 716 [152 Cal.Rptr. 65].)

The parties concede and we agree that respondents exercised their authority as members of the duly constituted board of the Housing Authority and thus acted under color of state law. (See Health & Saf. Code, § 34240 et seq.)

In support of his first contention appellant argues that he had a legitimate expectancy of continued employment, in that he only could be discharged upon a majority vote of the combined boards of the Housing Authority and the Redevelopment Agency.

■ The types of property interests entitled to constitutional protection take many forms. (*Board of Regents* v. *Roth* (1972) 408 U.S. 564, 569-571 [33 L.Ed.2d 548, 556-557, 92 S.Ct. 2701].) Clearly, one may have acquired a property interest in his continued employment. (*Perry* v. *Sindermann* (1972) 408 U.S. 593, 599-602 [33 L.Ed.2d 570, 578-580, 92 S.Ct. 2694]; *Board of Regents* v. *Roth, supra,* at pp. 576-578 [33 L.Ed.2d at pp. 560-561].)

But in order to establish such a property interest, an employee must "have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (*Board of Regents* v. *Roth, supra,* 408 U.S. at p. 577 [33 L.Ed.2d at p. 561].) Whether appellant can stake a legitimate claim to his post as executive director depends upon the circumstances and agreements surrounding his appointment, specifically, paragraph 6 of the personnel policy. (See *Bishop* v. *Wood* (1976) 426 U.S. 341, 343-345 [48 L.Ed.2d 684, 689-690, 96 S.Ct. 2074].)

That section provides in pertinent part: ". . . The Executive Director is appointed by, and serves at the pleasure of the joint Board of Commissioners."

The phrase, "serves at the pleasure," has been interpreted to mean that an employee may be discharged without cause and without notice or a hearing—so long as the employer did not discharge that employee for exercising his constitutional rights. (See Bishop v. *Wood, supra,* 426 U.S. at pp. 345-346 [48 L.Ed. 2d at pp. 690-691]; *Bollow* v. *Federal Reserve Bank of San Francisco* (9th Cir. 1981) 650 F.2d 1093, 1097-1098, cert. den., 455 U.S. 948 [71 L.Ed.2d 662, 102 S.Ct. 1449]; *Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 782 [97 Cal.Rptr. 657, 489 P.2d 537]; *Kimura* v. *Roberts* (1979) 89 Cal.App.3d 871, 874 [152 Cal.Rptr. 569].) Appellant does not allege that he was discharged for the lawful exercise of his constitutional rights.

■ Appellant does not challenge the foregoing definition. Rather, he asserts that since a majority of the joint boards was needed to terminate him, he had a greater expectation of continued employment, which was violated by the unilateral action of respondents.

Assuming for the moment that the personnel policy required action by *both* boards to terminate appellant, we fail to see how this procedure could create a constitutionally protected property right where no right existed before. If a majority of both boards had voted to dismiss appellant, he still would not have been entitled to notice and a hearing. By serving "at the will" of the comissioners, appellent could be terminated with or without cause. That the decision to terminate appellant should have been made by two boards instead of one board does not transform appellant's "at-will" status into a constitutionally protected property right for which he would have been entitled to a pretermination hearing. Respondents' alleged unlawful conduct as not actionable under the federal Civil Rights Act.

In any event, appellant's interpretation of the personnel policy to require the vote of both boards does not withstand scrutiny. The plain language of the provision appears to condition appellant's employment upon the continued satisfaction of both boards. Conversely, if either board is dissatisfied with appellant's performance for *any* reason, then either board may terminate him upon a majority vote of its members. This was the position adopted by counsel for the Housing Authority, Bianchi, and counsel for the Redevelopment Agency, Hochman.

Any other interpretation would emasculate the provision and grant one board a veto over the other board's otherwise absolute discretion to

terminate appellant at will. It would be unworkable to permit one autonomous board to foist its choice for executive director upon the objecting board. Such a result would have a calamitous effect upon the smooth and efficient functioning of the protesting agency. The commissioners on either board must necessarily repose great trust and respect in their executive director. As emphasized at the August 13 meeting, it was just this erosion of trust and confidence in appellant's ability that created discord among the members of the board of the Housing Authority. Appellant's interpretation of the personnel policy is unreasonable, and we reject it for that reason.

We also reject appellant's position because it would essentially compel the Housing Authority to abdicate its statutory autonomy over its executive director. This result is contrary to the legislative directive that the board of the Housing Authority "shall determine [the] qualifications, duties, terms of employment and compensation . . ." of its executive director. (Health & Saf. Code, § 34278.) Administrative regulations and policies, like statutes, should be interpreted to uphold their validity. (See *Beeline Fashions, Inc.* v. *State Bd. of Equalization* (1976) 56 Cal.App.3d 389, 396 [128 Cal.Rptr. 567].) Appellant would have us condone an impermissible delegation of authority to the Redevelopment Agency, at least in the absence of a joint powers agreement between the two agencies. (See Health & Saf. Code, § 34249; Gov. Code, § 6500 et seq.)

Therefore, we conclude that appellant served at the pleasure of the Housing Authority, and that prior to his dismissal he was entitled neither to a written notice of the complaints against him nor to a hearing to challenge those complaints. (See *Bishop* v. *Wood, supra,* 426 U.S. at p. 348 [48 L.Ed. 2d at p. 698].)

II. *Appellant's liberty interest was not violated.*

■ Alternatively, appellant asserts that respondent Ehrlich's remarks at the August 13 meeting deprived him of a constitutionally protected liberty interest because these charges seriously damaged his standing and reputation in the community and foreclosed him from taking advantage of other employment opportunities. In essence, appellant was charged with incompetence, willful refusal to implement the board's directives, exhibiting arrogance towards the low income tenants he served, and failing to communicate fully with the board.

Appellant relies on the language in *Board of Regents* v. *Roth* which provides that " '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice

and an opportunity to be heard are essential.' [Citations.]" (*Board of Regents* v. *Roth, supra,* 408 U.S. at p. 573 [33 L.Ed.2d at p. 558].) As discussed below, appellant's expansive interpretation of this language is not sustainable.

In *Paul* v. *Davis* (1976) 424 U.S. 693 [47 L.Ed.2d 405, 96 S.Ct. 1155] the Supreme Court had an opportunity to reexamine the above quoted language. They concluded that this language did not transform every defamation or reprimand of a public employee by his or her employer into a deprivation of a liberty interest within the meaning of the due process clause of the Fourteenth Amendment. (*Id.*, at p. 702 [47 L.Ed.2d at p. 414].) Rather, the court reasoned that in order to rise to the level of a protected liberty interest, the charges against an employee must be accompanied by a change of legal status or a deprivation of a right previously held, e.g., the right to obtain future employment. (*Id.,* at pp. 708-709 [47 L.Ed.2d at pp. 417-418].)

Typical of such actionable statements are those accusations which charge a person with dishonesty and corruption in public office. (*Owen* v. *City of Independence* (1980) 445 U.S. 622, 633-634, fn. 13 [63 L.Ed.2d 673, 682-683, 100 S.Ct. 1398]); disloyalty to our government (*Wieman* v. *Updegraff* (1952) 344 U.S. 183, 191 [97 L.Ed. 216, 222, 73 S.Ct. 215]); association with subversive organizations (*Anti-Fascist Committee* v. *McGrath* (1951) 341 U.S. 123, 126-129 [95 L.Ed. 817, 829-831, 71 S.Ct. 624]); charges of chronic alcoholism accompanied with loss of the right to purchase liquor (*Wisconsin* v. *Constantineau* (1971) 400 U.S. 433, 436 [27 L.Ed.2d 515, 518, 91 S.Ct. 507]); and dishonesty and immorality (*Board of Regents* v. *Roth,. supra,* 408 U.S. at p. 573 [33 L.Ed.2d at p. 558].)

Mere allegations related to inadequate job performance do not infringe a person's liberty interest. (See *Bishop* v. *Wood, supra,* 426 U.S. at p. 348 [48 L.Ed.2d at p. 692]; *Board of Regents* v. *Roth, supra,* 408 U.S. at p. 573 [33 L.Ed.2d at p. 558]; *Bollow* v. *Federal Reserve Bank of San Fransciso, supra,* 650 F.2d at pp. 1100-1101; *Mazaleski* v. *Treusdell* (D.C. Cir. 1977) 562 F.2d 701, 711-714; *Stretten* v. *Wadsworth Veterans Hospital* (9th Cir. 1976) 537 F.2d 361, 366; but see *Adler* v. *Los Angeles Unified School Dist.* (1979) 98 Cal.App.3d 280, 289 [159 Cal.Rptr. 528].)

Appellant was not terminated because he committed a serious felony, for manifest racism, for any immorality, or because he lacked intellectual ability, as distinguished from his performance. (See *Mazaleski* v. *Treusdell, supra,* 562 F.2d at p. 714.) Appellant was discharged because he failed and/or refused to perform his job as directed by the board.

While appellant's dismissal may make him less attractive to a prospective employer, such an impediment does not rise to the level of a protected liberty interest. Respondents did not invoke any regulations to bar appellant from holding future public office. (See *Board of Regents* v. *Roth, supra,* 408 U.S. at p. 573 [33 L.Ed.2d at p. 558].) In fact, appellant continued to serve as executive director of the Redevelopment Agency for approximately six months following his dismissal.

"To infringe one's liberty, the effect of government action on future employment must extend beyond a disadvantage or impediment; it must 'foreclos[e] his freedom to take advantage of other employment opportunities.' [Citation.]" (*Mazaleski* v. *Treusdell, supra,* 562 F.2d at p. 713.) To hold otherwise would open the courts to claims for due process violations each time an employee is dismissed for substandard work. It is not the purpose of the Fourteenth Amendment to second-guess and interfere with an employer's business judgment. We conclude that appellant's liberty interest was not infringed.

III. *Respondents have qualified immunity from liability.*

Even assuming appellant was impermissibly deprived of notice of the charges against him and a pretermination hearing, respondents are entitled to qualified, good-faith immunity from liability. (*Owen* v. *City of Independence, supra,* 445 U.S. 622, 637-638 [63 L.Ed.2d 673, 684-685]; *Wood* v. *Strickland* (1975) 420 U.S. 308, 318-322 [43 L.Ed.2d 214, 222-225, 95 S.Ct. 992]; *Zisk* v. *City of Roseville* (1976) 56 Cal.App.3d 41, 50-51 [127 Cal.Rptr. 896].)

Whether good-faith immunity exists is dependent ". . . upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity . . . ." (*Scheuer* v. *Rhodes* (1974) 416 U.S. 232, 247-248 [40 L.Ed.2d 90, 103, 94 S.Ct. 1683].)

On the other hand, a public official is not immune from liability ". . . if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [employee] affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the [employee]." (*Wood* v. *Strickland, supra,* 420 U.S. at p. 322 [43 L.Ed.2d at p. 225].)

Respondents' declarations supporting their motion for summary judgment establish that they relied upon the advice of their attorney, Albert Bianchi, that they could amend the personnel policy without approval of the Redevelopment Agency and that they could unilaterally vote to discharge appellant without affording him a pretermination hearing.[8]

In his supporting papers appellant does not challenge the reasonableness of respondents' reliance on their counsel's advice or allege facts suggesting that they did not act in good faith. Rather, in his opposition to the motion for summary judgment, he urges that this issue cannot be decided upon a motion for summary judgment, but that it is a jury question.

Appellant misconstrues the function of a motion for summary judgment. Where material facts are undisputed, it is not only proper but preferable to decide the defense of qualified immunity without incurring the time and expense of a trial. (See *Procunier* v. *Navarette* (1978) 434 U.S. 555, 558-559 [55 L.Ed.2d 24, 28-29, 98 S.Ct. 855]; *Bollow* v. *Federal Reserve Bank of San Francisco, supra,* 650 F.2d at p. 1096; Code Civ. Proc., § 437c.)

Respondents' declarations and the declaration of counsel, Albert Bianchi, affirmatively demonstrate that at all times respondents reasonably believed that they were acting within the authority of their public offices, that they made their decision to terminate appellant only upon their perception of his performance as executive director, and that they relied upon counsel's advice with respect to the procedures for dismissing appellant. The grant of qualified immunity for public officials presupposes that mistakes will be made. However, "[t]here must be a degree of immunity if [our] schools or cities are to function effectively. [Citation.] The alternative would be a reluctance to make important but politically controversial decisions, . . ." (*M. J. Brock & Sons, Inc.* v. *City of Davis* (N.D.Cal. 1975) 401 F.Supp. 354, 360.) These declarations, uncontradicted by appellant, amply demonstrate that respondents acted only with the best interests of the Housing Authority in mind, and that they harbored no ill will toward appellant or knowingly infringed upon his constitutional rights. (See *Zisk* v. *City of Roseville, supra,* 56 Cal.App.3d at pp. 50-51.)

---

[8]Respondents were all citizen members of the board of the Housing Authority. At the time of the dismissal, Myrna Bergerson, 75 years old, and Rogers Jones, 73 years old, lived in public housing projects in Marin County. Leatrice Mikkelsen was a housewife and the mother of three children. Philip Ehrlich was an attorney. All respondents averred that they deferred to counsel, Albert Bianchi, on all legal matters.

IV. *Appellant failed to state a cause of action for conspiracy.*

■ Lastly, appellant urges that the judgment dismissing his allegation of conspiracy (42 U.S.C. § 1985(3)) on the ground that he failed to state facts sufficient to constitute a cause of action should be reversed. The record demonstrates that appellant entered into a stipulation to sustain respondents' demurrer to his first amended complaint. "It is, of course, an elementary rule of appellate procedure that a judgment or order will not be disturbed on an appeal prosecuted by a party who consented to it. [Citations.] A stipulation such as the one at bench is a consent within the meaning of this rule. [Citation.]" (*Atchison, T. & S. F. Ry. Co.* v. *Hildebrand* (1965) 238 Cal. App.2d 859, 861 [48 Cal.Rptr. 339].)

■ Even assuming that this issue is properly before us, appellant's complaint was properly dismissed. To state a cause of action for civil conspiracy, the complaint must allege the formation and operation of the conspiracy, the wrongful acts done pursuant thereto, and the resulting damage. (*Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 631 [102 Cal.Rptr. 815, 498 P.2d 1063].) Here respondents have not committed any civil wrong by refusing to give appellant notice of the charges against him or an opportunity to be heard. As discussed above, appellant was not entitled to a pretermination hearing under any theory raised. Accordingly, no act or acts of respondents are actionable.

The judgment is affirmed.

Scott, Acting P. J., and Feinberg, J., concurred.