Judith A. HELTON, Guardian of the person and Estate of Ernest J. McKimm, an incompetent, and Judith A. Helton, Individually, Plaintiff,

v.

RESERVE LIFE INSURANCE CO., a corporation, Defendant.

No. 75–17–GF.

United States District Court,
D. Montana,
Great Falls Division.

Sept. 15, 1975.

Hoyt & Bottomly, Great Falls, Mont., for plaintiff.

Cure, Borer & Lynch, Great Falls, Mont., for defendant.

## OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

 The complaint in two counts seeks damages on account of defendant's refusal to pay benefits alleged to be due under a disability policy. The first count seeks actual and punitive damages for failure to pay a hospital bill. A motion to strike is directed to the claim for punitive damages. In Montana such damages may be awarded where the breach of the insurance contract is likewise a violation of the insurance code. *State ex rel. Larson v. District Court,* 149 Mont. 131, 423 P.2d 598 (1967). R.C.M.1947 § 40–4011 requires that policies contain a provision providing for immediate payment of disability claims. This provision is applicable to defendant under R.C.M.1947 § 40–2609.

The motion to strike is denied.

In second count Judith A. Helton, daughter of the insured and guardian of his estate, seeks to recover for emotional distress to her as an individual caused by defendant's conduct. A motion to dismiss is directed to that count. The complaint (taken to be true) characterizes the defendant's conduct as

deliberate, oppressive, fraudulent, and malicious, and describes it as a "run-around." In response to the guardian's requests for payment, the defendant made requests for information, and then, after the information had been furnished, repeated the requests, and finally, after everything it had demanded had been furnished several times, lapsed into a long silence. If what the complaint says is true, the defendant's conduct was bad, but even so, it amounts to no more than a deliberate stalling and an ultimate failure to pay. The defendant's communications made no threats or accusations; they contained no harsh or obscene language. The stalling and failure to pay worried Judith A. Helton.

The question is whether under these facts Judith A. Helton can recover under Montana law. The answer is "no." In *Cashin v. Northern Pacific Ry.*, 96 Mont. 92, 28 P.2d 862 (1934), Montana broke away from the rule that there could be no cause of action for fright or mental distress unaccompanied by some physical injury. *Cashin* was followed in *Kelly v. Lowney & Williams, Inc.*, 113 Mont. 385, 126 P.2d 486 (1942). In both of these cases the plaintiffs were subjected to a personal fear of bodily injury arising out of physical violence occurring in their presence. The Montana Supreme Court has not yet considered the liability for emotional distress caused by nonviolent conduct and unaccompanied by any fear for personal safety.

■ Whatever law may be ultimately adopted by the Montana courts,[1] no current authority would support a recovery here. It may be that when a debtor refuses to pay a just debt he acts unreasonably, and it may be that the creditor in such event will suffer some emotional stress, and it may be that emotional stress always results in some bodily harm, and thus that in some way the failure to pay a just debt falls within some extended scope of the words used in Restatement (Second) of Torts § 312:

> Emotional Distress Intended
>
> If the actor intentionally and unreasonably subjects another to emotional distress which he should recognize as likely to result in illness or other bodily harm, he is subject to liability to the other for an illness or other bodily harm of which the distress is a legal cause,
>
> (a) although the actor has no intention of inflicting such harm, and
>
> (b) irrespective of whether the act is directed against the other or a third person.

The comments to the section, however, clearly indicate that a refusal to pay a debt is not the stuff out of which liability under it is fashioned. The comments to Section 312 speak of such things as an actor who "screams threats and violent abuse at a person whom he knows to be at death's door with a weak heart." The section is illustrated by a case in which an actor intentionally shoots a dog in close proximity to a child at a time when he knows the child's mother, who is watching, is pregnant and that his act is certain to startle her. In the comments to Section 312 it is stated that the section does not give protection to mental and emotional tranquility in itself. Prosser speaks of liability for causing emotional distress in terms of "special situations of extreme misconduct." W. Prosser, Law of Torts, § 11 (3d ed. 1964). The meaning of "extreme misconduct" is filled out by the illustrations used at 48–49:

> So far as it is possible to generalize from the cases, the rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. Such extreme outrage has been found, as in the leading Wilkinson

---

1. *See Wade v. Great American Ins. Co.*, 255 F.Supp. 735 (D.Mont.1966).

case, in decoying a woman suspected of insanity to a hospital by a concocted tale of an injured husband and child; in spreading the false rumor that the plaintiff's son had hanged himself; in bringing a mob to the plaintiff's door at night with a threat to lynch him unless he left town; and in wrapping up a very gory dead rat instead of a loaf of bread, for a sensitive soul to open.

(Footnotes omitted.)

Plaintiff relies on *Fletcher v. Western National Life Ins. Co.*, 10 Cal.App.3d 376, 89 Cal.Rptr. 78, 47 ALR3d 286 (1970), but in that case defendant not only refused to pay but falsely accused plaintiff of misrepresentation and threatened retaliatory measures if the plaintiff did not compromise the claim. Somewhat similar is the case of *National Life & Accident Ins. Co. v. Anderson*, 187 Okla. 180, 102 P.2d 141 (1940). Nothing of that sort appears here.

The motion to dismiss the second count is granted.