No. 14742

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

JACK KENEALLY,

Plaintiff and Appellant,

vs.

STERLING ORGAIN and NATIONAL
CASH REGISTER COMPANY (NCR),

Defendants and Respondents.

---

Appeal from:  District Court of the Thirteenth Judicial District,
Honorable  Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Calvin A. Calton argued, Billings, Montana

For Respondents:

Anderson, Symmes, Brown, Gerbase, Cebull and Jones,
Billings, Montana
John K. Addy argued and James L. Jones argued, Billings,
Montana

---

Submitted:  November 7, 1979

Decided:  JAN 30 1980

Filed:  JAN 30 1992

_Thomas J. Kearney_
Clerk

Mr. John C. Sheehy delivered the Opinion of the Court.

Jack Keneally appeals from an order of the District Court, Thirteenth Judicial District, Yellowstone County, granting summary judgments against him, as described hereafter, on his claims against Sterling Orgain and National Cash Register Company.

National Cash Register Company (NCR) is engaged in the business of selling various types of business machines. Jack Keneally began working for NCR in its Butte office in 1968. After promotions there, Keneally was promoted to the position of account manager and transferred from Butte to the Billings branch office. During the time that Keneally has been employed by NCR, Sterling Orgain was his supervisor, first as the Butte branch manager, and later as the Montana district director of NCR.

Keneally's employment as account manager was terminable at the will of either party, but was governed by an NCR employment contract and company manuals, which were subject to periodic NCR revision. As an account manager, he received a straight commission based on the Billings branch office sales.

Under the NCR contract and manuals, an account manager was not entitled to commissions on sales until the machines had been installed and invoiced. On the termination of employment of an account manager, commissions from sales to one in that position were to be credited only at the time of invoicing and were to be credited to the account manager then assigned to the territory. Invoicing occurs only when the machines are installed.

NCR terminated Keneally's employment in May 1975. At that time Keneally claimed he had sold machines which would entitle him upon invoicing and installation to $7,416.

-2-

Keneally alleges that he was terminated not for his lack of sales ability, but because he made complaints to Sterling Orgain and others in the company that the service to customers was inadequate and faulty in his territory; that Sterling Orgain wanted to take over the Billings territory which had a greater prospect for sales; and, that Sterling Orgain would profit both from the viewpoint of bonuses and from the commissions which Keneally earned, but which Orgain would receive after Keneally had been terminated.

Keneally charged five grounds of recovery against the defendants:

(1) The first claim for quantum meruit;

(2) The second claim on the Montana Wage Claims statute;

(3) The third claim based on unlawful interference with his contract;

(4) The fourth claim based on malicious interference with his contract;

(5) The fifth claim based upon his wrongful discharge.

On motions made by NCR and Sterling Orgain for summary judgment, the District Court granted summary judgment against Keneally as follows: as to the first and second claim, partial summary judgment, that is, judgment except for invoices for machinery installed within fourteen days after Keneally's discharge; as to the fifth claim for wrongful discharge, summary judgment for both defendants; as to the third claim for unlawful interference and the fourth claim for malicious interference with his contract, summary judgment in favor of NCR. The third and fourth claims remain as to Sterling Orgain.

Keneally limits his appeal to the following issues:

(1) Whether appellant is entitled to recover commissions on sales made prior to his discharge under the theory of quantum meruit (it would follow that he would be entitled to recover penalties and attorney fees under section 39-3-201, et seq., MCA.)

(2) Whether appellant may maintain under the facts here a cause of action for wrongful discharge in Montana.

The first hurdle faced by Keneally is that to prove a claim in quantum meruit, he must do it by evidence of an express contract, his employment contract. It is true that in Montana one having an express contract which he has performed may sue in quantum meruit and use the contract as proof of the reasonable value of his services. Dalgarno v. Holloway (1919), 56 Mont. 561, 186 P. 332; Neuman v. Grant (1907), 36 Mont. 77, 92 P. 43; Wilcox v. Newman (1920), 58 Mont. 54, 190 P. 138. It is however a fatal variance to allege an implied contract (quantum meruit) and to prove an express contract, though we have recognized an exception where full performance of the contract was prevented by the defendant. Puetz v. Carlson (1961), 139 Mont. 373, 380, 364 P.2d 742, 746.

Keneally, however, has not brought himself within the exception provided in Puetz v. Carlson, supra. His contract of employment was terminable at the will of his employer. He has not been prevented from full performance of his contract, because under his termination provisions, he has no enforceable contract to continue employment with NCR. See Myhre v. Myhre (1976), 170 Mont. 410, 422, 554 P.2d 276, 282. He has no contractual right and no implied right upon which to base a claim for commissions as to machines which were installed and

-4-

invoiced after his employment was terminated. The District Court was correct in determining that an additional fourteen days from his termination would be required, because under the terms of his contract, he was entitled to a fourteen day advance notice of the termination. Commissions on machines sold by him and invoiced and installed prior to the fourteen day period would rightfully belong to him, but not thereafter.

Because he has no right to recovery on quantum meruit, his claim for attorney fees and costs under the wage claim statute also fails.

We turn now to the denial by the District Court of Keneally's claim for wrongful discharge by the defendants. The question is one of first impression in this Court. The district judge, the Hon. Charles Luedke, relied generally upon Percival v. General Motors Corporation (D. Mo. 1975), 400 F.Supp. 1322. In that case, the federal court notes the growing tendency of the judicial system to grant relief to persons who have been abusively or wrongfully discharged. However, the federal court notes that this right of action occurs only when a public policy has been violated. Thus, that court noted, correctly, that a discharge by an employer in a contract terminable at will does not give rise to a claim for wrongful discharge in the ordinary sense, though the firing or the termination may have been unjustified. It is only when a public policy has been violated in connection with the wrongful discharge that the cause of action arises. Examples given by the courts are: refusal to perjure himself in the case of one employee; firing of another employee for asserting a right to obtain Workers' Compensation benefits to which he was statutorily entitled; and refusal of sexual relations.

-5-

We can find no public policy violated by the discharge of Keneally unless it may be considered that the public is hurt when a corporation allows sales of its machines to be made upon promises of adequate service and maintenance and then fails with respect to the adequate service or maintenance. Keneally had complained on this point to his supervisors, and he contends that this is one of the principal grounds for his discharge. The same argument was faced by the Pennsylvania Court in Geary v. United States Steel Corporation (1974), 319 A.2d 174, 178-79. There an employee who had been discharged had vigorously brought to the attention of his superiors the unsafe nature of its tubular products sold to the oil and gas industry. After examining the problem, the Pennsylvania Court said:

> ". . . The praiseworthiness of Geary's motives does not detract from the company's legitimate interest in preserving its normal operational procedures from disruption. In sum, while we agree that employees should be encouraged to express their educated views on the quality of their employer's products, we are not persuaded that creating a new non-statutory cause of action of the sort proposed by appellant is the best way to achieve this result. On balance, whatever public policy imperatives can be discerning here seem to militate against such a course." 319 A.2d at 180.

We do not disagree at this juncture that in a proper case a cause for wrongful discharge could be made out by an employee. The District Court here could not discern that any public policy had been violated by Keneally's termination and neither can we. Accordingly, we must concur.

No issue is raised on appeal as to the other elements of the summary judgment orders.

Accordingly, the decisions of the District Court are affirmed and the matter is remanded for further proceedings in the cause in accordance with the summary judgments granted.

_____
                                 Justice

We Concur:

_____
                Chief Justice

_____

_____

_____
                Justices