No. 81-219

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

MARLENE S. GATES,

Plaintiff and Appellant,

vs.

LIFE OF MONTANA INSURANCE COMPANY,
a Montana Corporation,

Defendant and Respondent.

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Wellcome and Frost, Bozeman, Montana
Al Frost argued, Bozeman, Montana

For Respondent:

Landoe, Brown, Planalp, Kommers & Lineberger, Bozeman,
Montana
Gene I. Grown argued, Bozeman, Montana

Submitted: September 23, 1981

Decided: JAN 5 1982

Filed: JAN 5- 1982

Thomas J. Kearney
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Marlene Gates appeals from a summary judgment entered by the District Court, Gallatin County, in favor of Life of Montana Insurance Co., on her claims for relief arising from the termination of her employment.

Gates commenced employment as a cashier with defendant on July 29, 1976, under an oral contract of indefinite duration. On October 19, 1979, Gates was called in to meet with her supervisor, Roger Syverson, and without prior warning she was given the option of resigning or being fired. She alleges that while in a distraught condition and under duress she signed a letter of resignation which was handed to her by Syverson. She then went home and discussed the situation with her husband who advised her to get the letter back and to tell Syverson that she was not resigning. Gates states that she immediately called Syverson and demanded the letter be returned and that he promised to do so. Her attorney also sent a letter demanding a return of the letter of resignation. In his deposition, Syverson denied that Gates or her attorney demanded a return of the letter. He testified that Gates requested a photocopy of the letter.

When Gates applied for unemployment compensation benefits, her claim was denied on the ground that she voluntarily resigned. She alleges that respondent's actions in obtaining the letter of resignation from her by duress and failing to return the letter upon demand wrongfully deprived her of unemployment benefits.

The respondent issued an employee handbook in July or August, 1978, which included a section on discharge of employees as follows:

> "The violation of certain rules of conduct are
> [sic] subject to reprimand or dismissal with
> prior warning. Such infractions include:
>
>> "1.   Carelessness
>> "2.   Incompetency
>> "3.   Insubordination
>> "4.   Irregular attendance
>> "5.   Continued tardiness

"Dismissal without prior warning:

"1. Dishonesty
"2. Disclosure of confidential information."

Respondent's representatives testified that Gates was not guilty of dishonesty or disclosure of confidential information, but that she was careless, incompetent, insubordinate, and excessively absent. Gates testified she was told her attitude was bad but that she was never told her performance was substandard or that she would be terminated if she did not improve.

Syverson testified that he had informed Gates at an evaluation meeting in April or May of 1979 that she was too slow, she had a bad attitude and she was not getting along with others. He stated that he did not warn her that she would be fired if she did not improve, but he repeatedly told her she needed to improve. Job evaluation forms indicate her performance was fair to poor in all categories rated. Syverson testified that the meeting on October 19 was calm and unemotional and that Gates did not appear upset. Gates testified that she was "rather disturbed" and "kind of in shock." She stated that she signed the letter of resignation because she thought it would be better for her record and because Syverson told her he would give her a letter of recommendation. Syverson testified that all he would say in the letter of recommendation would be that Gates was employed there for three years.

Employees of respondent participated in a retirement pension plan by which each employee contributed a certain percent of his salary. Benefits vested after the employee completed four years of service with the respondent. If an employee left the company prior to that, his contributions were shared among the surviving employees. Gates alleges that the respondent wrongfully deprived her of retirement benefits.

Gates filed her original complaint on December 6, 1979, alleging that she had been wrongfully discharged from her

employment with Life of Montana and seeking damages under several theories. The respondent's motion for summary judgment was originally denied by the trial court, but after a second amended complaint was filed the renewed motion was granted. Eight claims for relief were detailed in the second amended complaint, as follows:

1) breach of employment contract, breach of implied covenant of good faith and fair dealing; and the tort of wrongful discharge;

2) violation of Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq.;

3) intentional infliction of emotional distress;

4) violation of section 39-2-503, MCA, by failing to give notice prior to discharge;

5) violation of section 39-51-3204, MCA, by failing to disclose material facts to the Unemployment Compensation Division;

6) fraud and deceit in procuring the letter of resignation;

7) violation of section 28-1-201, MCA;

8) fraud and deceit in failing to return the letter of resignation.

The trial court found that Gates had failed to show any violation of public policy to support her action for wrongful discharge, citing Keneally v. Orgain (1980), ____Mont.____, 606 P.2d 127, 37 St.Rep. 154. The issue on appeal is whether the trial court erred in granting summary judgment in favor of the respondent on all claims.

A motion for summary judgment is properly granted if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. While the initial burden is on the movant, the burden shifts where the record discloses no genuine issues of material fact. The party opposing the motion must then present specific facts raising a factual issue. Rule 56(e), M.R.Civ.P. Conclusory or speculative

statements are insufficient and the trial court has no duty to anticipate possible proof. Barich v. Ottenstror (1976), 170 Mont. 38, 550 P.2d 395; Harland v. Anderson (1976), 169 Mont. 447, 548 P.2d 613. Each of the appellant's claims for relief must be examined in the light of the above rules.

At the outset it must be noted that in this case all of Gates' theories for recovery depend upon an involuntary termination of employment. The employer maintains that she voluntarily resigned. Thus there is a threshold factual issue which should be submitted to a jury or factfinder. Molinar v. Western Electric Co. (1st Cir. 1975), 525 F.2d 521, cert.denied 424 U.S. 978; and Pierce v. Ortho Pharmaceutical Corp. (1980), 84 N.J. 58, 417 A.2d 505.

For her first claim, Gates alleges that her termination was wrongful in that the employer breached the contractual terms of her employment as set forth in the employee handbook or that the employer breached the implied covenant of good faith and fair dealing contained in her contract of employment. The respondent issued an employee handbook which stated that prior to dismissal for unsatisfactory performance a warning would be given to the employee. There are factual disputes as to whether the conduct of the employer prior to Gates' termination constituted a prior warning and whether Gates was terminated for the causes included in the employee handbook. If the employer failed to follow its employee handbook, does this failure give rise to a claim for relief?

The employee handbook was not distributed until about two years after Gates was hired. It constituted a unilateral statement of company policies and procedures. Its terms were not bargained for, and there was no meeting of the minds. The policies may be changed unilaterally at any time. The employee handbook was not a part of Gates' employment contract at the time she was hired, nor could it have been a modification to her contract

because there was no new and independent consideration for its terms. Section 28-1-1601, MCA; Reiter v. Yellowstone Co. (1981), ___Mont.___, 627 P.2d 845, 38 St.Rep. 686. An employee handbook distributed after the employee is hired does not become a part of that employee's contract. Johnson v. National Beef Packing Co. (1976), 220 Kan. 52, 551 P.2d 779. Therefore the handbook requirement of notice prior to termination is not enforceable as a contract right.

Gates next contends that her employer owed her a duty to act in good faith with respect to her discharge. The doctrine of implied covenant of good faith in employment contracts has been neither adopted nor rejected by this Court, although it was discussed in Reiter v. Yellowstone County, supra. Reiter is distinguishable in that the issue there was whether an employee at will had a property interest in continued employment and was entitled to procedural due process prior to termination. In Reiter we did not reach or decide the issue presented here.

A general principle of good faith and fair dealing has been recognized in commercial transactions by the Uniform Commercial Code, section 30-1-203, MCA, and in insurance contracts, First Security Bank of Bozeman v. Goddard (1979), 181 Mont. 407, 593 P.2d 1040. Recent decisions in other jurisdictions lend support to the proposition that a covenant of good faith and fair dealing is implied in employment contracts. Fortune v. National Cash Register Co. (1977), 373 Mass. 96, 364 N.E.2d 1251; Monge v. Beebe Rubber Co. (1974), 114 N.H. 130, 316 A.2d 549. These cases emphasize the necessity of balancing the interests of the employer in controlling his work force with the interests of the employee in job security. In adopting the doctrine of good faith in employment contracts the courts did not seek to infringe upon the interests of the employer, but recognized that:

> " . . . an employer is entitled to be motivated
> by and to serve its own legitimate business
> interests; that an employer must have wide lati-
> tude in deciding whom it will employ in the face

> of the uncertainties of the business world; and
> that an employer needs flexibility in the face
> of changing circumstances." Fortune v. National
> Cash Register Co., supra, 364 N.E.2d at 1256.

Yet the employee is entitled to some protection from injustice.

The circumstances of this case are that the employee entered into an employment contract terminable at the will of either party at any time. The employer later promulgated a handbook of personnel policies establishing certain procedures with regard to terminations. The employer need not have done so, but presumably sought to secure an orderly, cooperative and loyal work force by establishing uniform policies. The employee, having faith that she would be treated fairly, then developed the peace of mind associated with job security. If the employer has failed to follow its own policies, the peace of mind of its employees is shattered and an injustice is done.

We hold that a covenant of good faith and fair dealing was implied in the employment contract of the appellant. There remains a genuine issue of material fact which precludes a summary judgment, i.e. whether the respondent failed to afford appellant the process required and if so, whether the respondent thereby breached the covenant of good faith and fair dealing.

As to all other claims against the respondent, however, summary judgment was properly entered. The District Court correctly concluded that appellant's claim in tort for wrongful discharge is unsupported by any showing of a violation of public policy as required under Keneally v. Orgain, supra.

The complaint further alleged that the respondent violated the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., by interfering with or preventing the exercise of her rights under the repondent's retirement plan. Under the terms of the plan, at the time of her termination appellant had no vested rights in retirement benefits. Appellant argues that a factual issue exists as to whether she was discharged in order to prevent her from obtaining her benefits,

pointing out that the amounts she paid into the plan would accrue to other employees and primarily to the president of the company. However, she has presented no evidence from which an inference may reasonably be drawn that the employer discharged her with an intent or motive to deprive her of benefits. Her claim for coercive interference under 29 U.S.C. § 1141 is purely speculative and conjectural without any evidentiary foundation.

Gates' claim for intentional infliction of emotional distress must also fail. The uncontradicted facts show that she was "rather disturbed" and "kind of in shock." Under any known standard these allegations are insufficient to entitle her to recover. Kelly v. Lowney & Williams, Inc. (1942), 113 Mont. 385, 126 P.2d 486; Helton v. Reserve Life Insurance Co. (D.Mont., 1975), 399 F.Supp. 1322.

Appellant argues the respondent violated section 39-2-503, MCA, by failing to give notice prior to termination. That statute, however, does not require prior notice. Reiter v. Yellowstone Co., supra.

We need not discuss in detail the other claims for relief which are listed above. The appellant failed to meet her burden of presenting evidence which raises a genuine issue of material fact for determination at a trial.

The summary judgment is affirmed in part and reversed in part and the case is remanded for further proceedings in accordance with this opinion.

_____
Chief Justice

We concur:

_____

_____

- 8 -

_____
Justices

Justice Fred J. Weber specially concurs:

I concur with the holding of the foregoing majority opinion in all respects. In addition, I would point out that in the course of further proceedings the employee handbook would be properly admissible as evidence to be considered in determining whether the respondent had breached the covenant of good faith and fair dealing owing to the appellant.

_____
Justice