MR. JUSTICE MORRISON
dissenting:
I respectfully dissent from the majority opinion.
I do not take issue with the facts as they are set forth in the majority opinion. However, they need to be supplemented.
In addition to the facts set forth in the majority opinion, it is important to note that the appellant, M. Iqbal Akhtar, signed a contract for the school year 1978-79. On May 23, 1977, the president of Eastern Montana College issued a memorandum containing tenure policy. That document provided, in part:
“By long tradition, the primary responsibility for tenure decisions must rest with one’s colleagues in his department for they are best qualified to judge the probationary faculty member and to assess his role in the plans for the future of the department. The AAUP ‘Redbook’ upon which much of the Collective Bargaining Contract has been based states clearly, page nine, ‘Statement on Procedural Standards in the Renewal or Non-renewal of Faculty Appointment’, that ‘Faculty status and related matters are primarily a faculty responsibility. Any recommendation regarding renewal of tenure should be reached by the appropriate faculty group in accordance with procedures approved by the faculty.’ The ‘Redbook’ further states that ‘The conscientious judgment of the candidate’s departmental autonomy in professional judgments is to prevail.’ (p.12) It would be inappropriate for me to interfere with that recommendation for other than procedural reasons except under extraordinary circumstances.” (Emphasis added.)
The appellant was denied tenure although he received a favorable recommendation from the college “rank and tenure committee”. Under the previously announced policy such action would only be taken where it appeared to the president that “extraordinary circumstances” existed for overriding the committee’s recommendation.
*224 The effect of such an announced policy was the subject of discussion by this Court in Gates v. Life of Montana Insurance Co. (1982), 638 P.2d 1063, 39 St. Rep. 16, and Nye v. Department of Livestock (1982), 639 P.2d 498, 39 St.Rep. 49. In Gates, the employer had promulgated certain personnel policies subsequent to the time the employee was hired. The Court held such promulgated policies were not part of the employment contract, but the employee was entitled to the benefit of those policies. The following excerpt is taken from the Court’s opinion:
“The circumstances of this case are that the employee entered into an employment contract terminable at the will of either party at any time. The employer later promulgated a handbook of personnel policies establishing certain procedures with regard to terminations. The employer need not have done so, but presumably sought to secure an orderly, cooperative and loyal work force by establishing uniform policies. The employee, having faith that she would be treated fairly, then developed the peace of mind associated with job security. If the employer has failed to follow its own policies, the peace of mind of its employees is shattered and an injustice is done.
“We hold that a covenant of good faith and fair dealing was implied in the employment contract to the appellant. There remains a genuine issue of material fact which precludes a summary jugdment, i.e., whether the respondent failed to afford appellant the process required and if so, whether the respondent thereby breached the covenant of good faith and fair dealing.” Gates, 639 P.2d at 1067, 39 St.Rep. at 20. (Emphasis added.)
The crux of Gates is that, once an employer has announced a policy, the employer must follow the policy even though it is not part of the employment contract. We held that “good faith and fair dealing” mandates such a process.
In Nye, a state employee was promoted and then fired. One issue on appeal was whether a claim for “wrongful discharge” could lie. This Court held that employment policies must be followed and that failure to do so may render the employer *225 liable for the tort of “wrongful discharge.” The employee involved was subject to “termination at will.” The following excerpts are taken from the Court’s recent opinion:
“The determination of whether the cause of action arises rests upon whether an unfair or unjustified termination was in violation of public policy.

U

“Policy 3-0130 states that ‘when punitive discipline is necessary, just cause, documentation of facts and due process are required.’
“We find that the Department of Livestock failed to apply its own regulations to Margaret Nye, and therefore violated public policy.” Nye, 639 P.2d at 502, 39 St.Rep. at 53-54.
We held in Nye that an employer, who fails to follow its own employment policies, may be liable for wrongful discharge. Gates and Nye, taken together, have expanded the Montana law pertaining to employer-employee relationships. The law enunciated in these two cases controls the outcome of Akhtar v. Eastern Montana College.
The record in the case before us is devoid of evidence which could constitute “extraordinary circumstances”. Under the employment policy articulated by the college president on May 23,1977, “extraordinary circumstances” provide the only basis for overriding a recommendation of the rank and tenure committee. Here, the recommendation of the committee was not followed, and no extraordinary circumstances were shown.
Although this appellant sought tenure and was denied, the result of the process was to terminate his services. The case cannot, therefore, be distinguished from Gates and Nye.
I would remand this case to the administrative level with instructions to implement the existing college employment policies and make appropriate fact findings.
MR. JUSTICE SHEA joins in the dissent.