MR. JUSTICE GULBRANDSON,
dissenting:
I respectfully dissent.
I would affirm the District Court setting aside the award of punitive damages.
In the first appeal of this case, Gates v. Life of Montana, (1982), 638 P.2d 1063, 39 St.Rep. 16, this Court stated:
“The circumstances of this case are that the employee entered into an employment contract terminable at the will of either party at any time. The employer later promulgated a handbook of personnel policies establishing certain procedures with regard to terminations. The employer need not have done so, but presumably sought to secure an orderly, cooperative and loyal work force by establishing uniform policies. The employee having faith that she would be treated fairly, then developed the peace of mind associated with job security. If the employer has failed to follow its own policies, the peace of mind of its employees is shattered and an injustice is done.
“We hold that a covenant of good faith and fair dealing was implied in the employment contract of the appellant. There remains a genuine issue of material fact which precludes a summary judgment, i.e. whether the respondent failed to afford appellant the process required and if so, whether the respondent thereby breached the covenant of good faith and fair dealing.
*312 “As to all other claims against the respondent, however, summary judgment was properly entered. The District Court correctly concluded that appellant’s claim in tort for wrongful discharge is unsupported by any showing of a violation of public policy as required under Keneally v. Orgain, [(Mont.1980) 606 P.2d 127], supra.
“Gates’ claim for intentional infliction of emotional distress must also fail. The uncontradicted facts show that she was ‘rather disturbed’ and ‘kind of in shock.’ Under any known standard these allegations are insufficient to entitle her to recover. Kelly v. Lowney & Williams, Inc. (1942), 113 Mont. 385, 126 P.2d 486; Helton v. Reserve Life Insurance Co. (D.Mont., 1975), 399 F.Supp. 1322,” 638 P.2d at 1067, 39 St.Rep. at 20-21.
The majority, in its valiant and successful effort to classify the conduct of the defendant as tortuous, states:
“Respondent is not being assessed punitive damages for failing to provide a warning prior to the firing. Rather, respondent’s conduct in obtaining the letter of resignation and refusing appellant’s demand for return, forms the basis for a jury finding of fraud, oppression, or malice.”
I note that jury instruction twenty-three reads:
“You are instructed that the letter of resignation dated October 19, 1979, became the property of defendant Life of Montana, and defendant Life of Montana was under no legal obligation to return the letter of resignation to the plaintiff.”
That was the only instruction given the jury where the letter of resignation was mentioned.
The case was obviously submitted and argued by plaintiff to the jury on the basis that liability also resulted from termination without notice. (See instructions no. 17, 19, and 21, which generally state that liability can arise from failure to follow established company policy).
If the jury followed instruction no. 23 (no duty of defendant to return the letter of resignation) and if, as the majority states, the respondent is not being assessed punitive *313 damages for failing to provide a warning prior to the firing, then the award must be based on the defendant’s conduct in obtaining the letter of resignation.
In that regard the plaintiff, Marlene Gates, testified as follows:
“Q. Have you ever considered why you would be given that option, the resigning or being fired? A. No.
“Q. Well, if he wanted to get rid of you, it would have been simple enough to say, ‘You’re fired,’ wouldn’t it? A. Yes.
“Q. But he allowed you to resign. A. Yes.
“Q. And did you think that over? Did you think over that decision of whether you should resign or be fired? A. Yes.
“Q. How long did you think it over? A. Well, I sat there I suppose it was minutes, you know. It was after five o’clock. I was wanting to get home and I’m sure he was wanting to get out of the office, and several things went through my mind, and I had to make a decision one way or the other.
“Q. You decided to resign. A. That’s right.
“Q. Why was that? A. Because I thought it would look better for my record, and I’m sure it wouldn’t be very good for their record to be known to be firing people.
“Q. You were concerned about how it would look for you? A. Yes.
“Q. If you signed the letter of resignation, you could tell people, T resigned,’ and you wouldn’t have to say, T was fired,’ right? A. Right.
“Q. And also, when you went out to seek another job, you wouldn’t have to say you were fired from your last one. You could say you resigned. A. That’s right.
“Q. So that was done as a benefit to you, is that right? A. Right. <<
“Q. Now, when you went into this meeting with Roger Syverson when you were terminated, was there any loud talk or loud language? A. No, there was not.
“Q. Was the conversation calm and businesslike? A. Yes.
*314 “Q. Were you nervous? A. Yes.
“Q. Was Roger nervous? A. He appeared to be very nervous, yes.
“Q. Would you tell us which of you were the most nervous? A. I didn’t weigh it out, no.
“Q. At least you could tell obviously that Mr. Syverson was nervous about this whole situation? A. Yes.
“Q. Did he intimidate you? A. No.
“Q. Did you intimidate him? A. I don’t believe I did.
“Q. Now, when you were asked to make a decision whether you wanted to resign or be fired, you thought that over pretty closely? A. Yes, I did.
“Q. And your decision was that you preferred to resign? A. Yes.
“Q. And you have, at that time you felt that was a good decision? A. Well, it was the better decision, yes.
“Q. And it was based on your determination that with the letter of resignation, you would be better able to get a job, plus it would be easier to handle questions of fellow employees and friends? A. Yes.
“Q. Those were your reasons for signing the letter of resignation? A. Yes.
“Q. And when you left the office that afternoon, October 19, 1979, you had concluded that that was the best thing to do. A. Yes.”
The majority opinion states: “The sting of punitive damages will only be sanctioned where there is evidence that the tortfeasor’s conduct rose to a level of oppression, fraud, or malice.”
I do not find that oppressive level of conduct, and neither did the trial judge when setting aside the award for punitive damage. His memorandum of September 28, 1982, stated: “In this case, I find no evidence that the defendant knowingly violated any duty to the plaintiff. There is no evidence that the defendant acted maliciously, intentionally, or willfully, and therefore the claim for punitive damages must fail.”
*315 This Court, in the first Gates opinion, correctly identified the threshold question of whether the employee’s resignation was voluntary. Unfortunately, the jury was not instructed on this point and no special verdict was requested.
In the first Gates decision, the Court cited Molinar v. Western Electric Company (1st Cir.1975), 525 F.2d 521, cert. den., (1976), 424 U.S. 978, 96 S.Ct. 1485, 47 L.Ed.2d 748, where the court decided the applicable rule that “an employee who voluntarily resigns cannot maintain a cause of action for wrongful discharge.” The court there stated:
“A more difficult issue is whether Molinar’s letter of resignation raised a jury issue of voluntariness. Molinar argues that he was induced to resign by the fraudulent promise that if he did so he would receive good recommendations. U
“[where] ... [a] voluntary resignation bars a suit for wrongful discharge, the following standard has been laid down:
“ ‘Even where the employee is told that he must choose between resignation and separation, the subsequent choice of resignation is not coerced unless the employee can show that his superior knew or believed that the reasons for the proposed separation could not be substantiated. . .’
“Cosby v. United States, [(1969 Ct.Cl.), 417 F.2d 1345, 189 Ct.Cl. 528 at 538] at 1355. This standard, which we think New York would adopt, limits a claim of duress to resignations extorted as a cover for wrongdoing, and recognizes that resignations in lieu of discharge may in many other instances reflect a mutually beneficial, good faith composition between an employer and employee having different views as to what each owes to the other. Thus, here, for Molinar’s resignation to be treated as coerced and legally ineffective, it must be shown not only that the projected discharge would amount to a legal breach of contract,but that there was bad faith, in that Western Electric knew or believed that the discharge could not be substantiated.”
*316 In my view, the majority, by extending the original Gates decision, has set the stage for a “just cause standard for at-will employees,” which I believe is a legislative rather than a judicial function.
Section 39-2-503, MCA, provides that employment, having no specified term, may be terminated at the will of either party on notice to each other. This section codifies the long-established, but recently questioned, “at-will” rule. Although this Court has recognized that this rule may be outdated, we have also recognized that “it is uniquely a province of the legislature to change it.” Reiter v. Yellowstone County (1981), Mont., 627 P.2d 845, 849, 38 St.Rep. 686, 690.
In Reiter, we noted that because of the operation of section 39-2-503, MCA, the at-will employee was not employed on a “discharge for cause only” basis. We stated, “assuming arguendo that appellant had an implied contract with an implied covenant of good faith, the employer did not act in bad faith because its conduct was statutorily permissible.” 627 P.2d at 849-850, 38 St.Rep. at 690.
In other words, under section 39-2-503, MCA, an employer or employee could terminate employment for any or all reasons, provided the reasons or manner of termination did not violate public policy. See Keneally u. Orgain (1980), Mont., 606 P.2d 127, 37 St.Rep. 154.
In the prior discussion of this case, this Court determined that a covenant of good faith and fair dealing was implied in the parties’ oral, at-will, employment contract. The basis for this holding was the employer’s promulgation of an employees’ handbook, two years after Gates began employment. The handbook provided certain guidelines for termination of employees. We stated that Gates had a cause of action because “if the employer failed to follow its own policies, the peace of mind of its employees is shattered and an injustice is done.” 638 P.2d at 1067, 39 St.Rep. at 20. We then found two genuine issues of material fact: (1) whether respondent failed to afford appellant Gates the process re *317 quired; and (2) whether the respondent thereby breached the covenant of good faith and fair dealing.
The Court had also decided in the prior decision that the guidelines in the employer handbook regarding notice prior to termination, were not enforceable as contract rights. We further determined that appellant’s claim in tort for wrongful discharge was properly dismissed because it was not supported by any showing of a violation of public policy.
The majority cites Lipinski v. Title Insurance Co. (1982), 202 Mont. 1, 655 P.2d 970, 39 St.Rep. 2283, for the assessment of punitive damages in bad faith cases.
Insurance cases upholding a breach of the implied covenant of good faith and fair dealing did not evolve under the same considerations as cases discussing a breach of the implied covenant in employment contracts. In the insurance cases, the courts look to whether the insurance company, with malice, fraud or oppression, abused its duty to act in good faith. The “bad faith” employment cases maintain a higher standard, in that the courts generally look for a violation of public policy on the part of the employer. See discussion in Pierce v. Ortho Pharmaceutical Corp. (1980), 84 N.J. 58, 417 A.2d 505, 12 A.L.R.4th 520, and Annot. 12 A.L.R.4th 544, (1982).
Most courts recognizing a cause of action based on a discharge that offends public policy have grounded that action in tort, while only a few have relied on an implied contract theory of recovery. Compare Tameny v. Atlantic Richfield Co. (1980), 27 Cal.3d 167, 610 P.2d 1330, 164 Cal.Rptr. 839, (recognizing a tort action for wrongful discharge when employee was terminated because he refused to commit a criminal act); Nees v. Hocks (1975), 272 Or. 210, 536 P.2d 512 (recognizing a tort action because an employee was dismissed for serving jury duty); and Kelsay v. Motorola (1978), 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (recognizing a tort action when employee was dismissed for filing a workers’ compensation claim); with Fortune v. National Cash Register Co. (1977), 373 Mass. 96, 364 N.E.2d 1251 *318 (recognizing a contract action when employee terminated in order not to receive earned bonuses or commissions); and Monge v. Beebe Rubber Co. (1974), 114 N.H. 130, 316 A.2d 549 (recognizing contract action and limiting damages to those for breach of contract when employee terminated for refusal to date foreman). For a more complete list, see Smith v. Atlas Off-Shore Boat Service (5th Cir.1981), 653 F.2d 1057, 1061 N.9.
In the prior decision, this Court relied on Fortune and Monge in recognizing that appellant has a cause of action under an implied covenant of good faith and fair dealing. Both Fortune and Monge grounded their decisions in contract, not tort law. Damages were limited to those allowed only for breach of contract. Moreover, the decision in Monge was later limited by the New Hampshire Supreme Court to situations where the termination violated public policy. See Howard v. Dorr Woolen Co. (1980), 120 N.H. 295, 414 A.2d 1273.
By allowing punitive damages in this case, the majority has identified, and approved, an independent tort of bad faith in at-will employment contracts. All other jurisdictions do so only when the termination violates public policy.
I note further that the termination in question occurred October 19, 1979. The Reiter decision, supra, acknowledging that “the employer did not act in bad faith because its conduct was statutorily permissible,” was dated May 4, 1981. The Keneally decision, supra, was dated January 30, 1980, and this Court, citing Percival v. General Motors Corp. (E.D.Mo.1975), 400 F.Supp. 1322, stated:
“Thus, that court noted, correctly, that a discharge by an employer in a contract terminable at will does not give rise to a claim for wrongful discharge in the ordinary sense, though the firing or the termination may have been unjustified. It is only when a public policy has been violated in connection with the wrongful discharge that the cause of action arises.” 606 P.2d at 129, 37 St.Rep. at 157.
*319 In view of the fact that the termination in question occurred long before the above two decisions of this Court, I would expect this Court to apply the law as stated in those decisions to this case. The Gates decision, supra, wherein the doctrine of implied covenant of good faith was first approved, was dated January 5, 1982. I do not object to the application of this doctrine retroactively for the determination of compensatory damages, but I do not agree that it should be the basis of punitive damages. I note, with approval, the citation by the trial judge in his memorandum of September 28, 1982, of Nees v. Hocks, supra. In that case an employee was discharged for missing work to attend jury duty, a clear violation of public policy. The Oregon court allowed compensatory damages, but would not allow the awarding of punitive damages. The Oregon court stated as follows:
“There is one factor, however, which is present in this case which has not been present in past cases approving the submission of the punitive damage issue to the jury. In our past cases, the defendant knew his conduct was regarded as culpable and would give rise to a cause of action because of past judicial decisions or legislation. For example: An automobile dealer turning back the odometer to deceive the purchaser, Lewis v. Worldwide Imports, 238 Or. 580, 395 P.2d 922 (1964); a finance company converting an automobile by wrongful repossession, Pelton u. Gen. Motors Accept. Corp., 139 Or. 198, 7 P.2d 263, 9 P.2d 128 (1932); and a drunken driver colliding with another car, Harrell v. Ames, 265 Or. 183, 508 P.2d 211 (1973).
“Until the trial court’s ruling in this case and our affirmance there was no judicial decision that an employer was liable if he discharged an employee because she served jury duty. As we earlier stated, the general rule known to employers and lawyers alike is that absent contract or statute, an employer can discharge an employee for any reason without incurring liability.
“If we held that punitive damages could be awarded in the *320 present case, we would be permitting the jury to punish defendants for conduct which they could not have determined beforehand was even actionable. The assessment of punitive damages has some of the same functions as the sanctions of criminal law. . . . The sanctions of the criminal law cannot constitutionally be imposed when the criminality of the conduct is not capable of being known beforehand.” 272 Or. 210, 536 P.2d at 516-17.
I would hold that punitive damages are not allowable where there has been no showing that the termination of an at-will employee violated public policy, until such time as the legislature repeals or amends section 39-2-503, MCA.
MR. JUSTICE HARRISON concurs in the foregoing dissent of MR. JUSTICE GULBRANDSON.