Larry L. **BLOTE**, Plaintiff and Appellant,

v.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF RAPID CITY**, Defendant and Appellee.

No. 15699.

Supreme Court of South Dakota.

Considered on Briefs Nov. 18, 1987.

Decided April 27, 1988.

---

Hermon B. Walker, Rapid City, for plaintiff and appellant.

Michael M. Hickey of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellee.

HENDERSON, Justice.

## ACTION/PROCEDURAL HISTORY

Plaintiff/Appellant Larry L. Blote (Blote) initiated (a) wrongful discharge and (b) defamation actions against Defendant/Appellee First Federal Savings and Loan Association of Rapid City (Federal) after dismissal from his job. The circuit court for Pennington County granted a motion by Federal for summary judgment regarding Blote's claims, concluding that no material questions of fact existed and Federal was entitled to judgment as a matter of law. Blote appeals, asserting error in four regards:

(1) Federal's personnel manual established an employment contract which terms Federal violated in dismissing him;

(2) Summary judgment was improper regarding Blote's claim under a prima facie tort theory;

(3) Federal's statements, during unemployment insurance proceedings, that he was terminated for work-related misconduct was defamation; and

(4) Allegations that he had taken kickbacks which were discussed among Federal's directors and officers constituted defamation.

We disagree and accordingly affirm the circuit court. These four issues are treated fully below.

## FACTS

Blote was initially hired by Federal in 1971 and was made a vice-president in 1979. His salary was determined on an annual basis, but no written employment contract was signed at any time by the parties. Federal's bylaws provided:

5. [T]he board of directors may appoint such additional officers and such employees and agents as it may from time to time determine. The term of office of all officers shall be one year or until their respective successors are elected and qualified; but *any officer may be removed at any time by the*

*board of directors.* (Emphasis supplied.)

7. **Powers of the board**—The board of directors shall have power—

\* \* \* \* \* \*

(c) To fix the compensation of directors, officers, and employees; *and to remove any officer or employee at any time with or without cause* [.] [1] (Emphasis supplied.)

In 1977, Federal promulgated a personnel manual. This manual contained no procedures regarding termination except passing references in its "Vacation" and "Leave for Personal Reasons" sections, which respectively provided:

Upon separation an employee's unused vacation entitlement ... will be paid except in cases of discharge for cause.

If employees remain on leave of absence for more than six (6) months, or if they accept employment elsewhere, without sanction of the Association, their employment with the Association shall be deemed to have terminated.

A grievance procedure was set out "to assure that all employees receive fair and equitable treatment...."

Several of Federal's departments began to incur large financial losses in 1983. This trend continued, creating acrimony between the Installment Loan Department (ILD) managed by Blote, and other units, especially the Loan Service Department (LSD), whose head Blote blamed for the losses. By March 1985, relations between ILD and LSD had deteriorated to the point that an outside agency reported to Federal's board of directors that the departments were at an impasse, reducing income and employee morale.

On March 30, 1985, three days after being told that he was going to be given control of some of his internal rival's operation, Blote was informed that the transfer was stopped because the board of directors disapproved. He was later asked to resign, or he would be fired. Blote refused to resign.[2]

Blote was fired on April 18, 1985, pursuant to a resolution unanimously passed by the board. This resolution specified that Blote was terminated because of the board's loss of confidence in him, financial losses, his failure to perform duties his own analysis called for, and other problems. The board allowed him compensation for unused vacation pay, notwithstanding the personnel manual's prohibition against such remuneration in terminations for cause.

After termination, Blote applied for unemployment compensation. Federal resisted, unsuccessfully, asserting that he had been fired for work-related misconduct. The South Dakota Unemployment Insurance Division determined that the alleged misconduct (failure to keep his expenses down and to follow underwriting guidelines) did not fall within statutory definitions (SDCL 61–6–14), and allowed his claim. Blote later heard from Federal employees that rumors of his having taken kickbacks had been discussed by Federal's directors and officers. There was no evidence that this kickback story circulated outside Federal itself.

## DECISION

### ISSUE I. WRONGFUL DISCHARGE

### ISSUE II. SUMMARY JUDGMENT

In reviewing summary judgments, we premise our decision on the principle that affirmance of such a judgment is proper if there exists any basis which would support the trial court's ruling. *Ruple v. Weinaug,* 328 N.W.2d 857 (S.D.1983); *Uken v. Sloat,* 296 N.W.2d 540, 542 (S.D.1980). Viewing the evidence in the light most favorable to Blote, we conclude that the summary judgment entered below was correct.

1. First Federal Savings and Loan Association of Rapid City is a federally chartered savings and loan association.

2. During this period, the board consisted of only four members, although the bylaws had been changed earlier that year to require a board of seven. The board was reconstituted at a meeting in April 1985, with seven members. At the time Blote was actually fired, the board was properly constituted.

■ Blote argues that Federal's personnel manual created an employment contract under whose terms he could only be fired with cause.[3] We disagree.

■ Analytically, this case is most similar to *Tombollo v. Dunn*, 342 N.W.2d 23 (S.D.1984), which concerned an employee terminable at will by statute. The lack of detailed procedures distinguishes it from *Osterkamp v. Alkota Mfg., Inc.*, 332 N.W.2d 275 (S.D.1983), where the employer's manual contained an exhaustive list of violations which would result in disciplinary action, and a statement disavowing discharge without just cause. Corporate bylaws are "the rules and regulations or private laws enacted by the corporation to regulate, govern, and control its own actions, affairs, and concerns, and its shareholders, directors, and officers." H. Henn & J. Alexander, *Laws of Corporations and Other Business Enterprises*, § 133, at 306 (3d ed. 1983) (footnote omitted). The bylaws, in this case, provide that officers can be terminated at any time, for any reason. They are the functional equivalent of SDCL 9–10–9, which operated to remove the presumption of annual hiring, set out in SDCL 60–1–3, in *Ruple*, 328 N.W.2d at 859. While such bylaws may sometimes be overridden by an employment contract, it must fairly appear that the contract is intended to do so. 18B Am.Jur.2d *Corporations* § 1432 (1985); Annot., *Bylaw of Corporation Authorizing Removal of Officer, Agent, or Employee at Any Time, as Affecting Contract of Employment for a Specified Period*, 145 A.L.R. 312, 317 (1943). There is no indication of such an intent. As there is no signed contract, no provisions in the personnel manual establishing exclusive procedures for termination, and the bylaws establish an at-will relationship, Blote's employment was governed by SDCL 60–4–4: "An employment having no specified term may be terminated at the will of either party on notice to the other, unless otherwise provided by

statute." *See also Hopes v. Black Hills Power & Light Co.*, 386 N.W.2d 490, 491 (S.D.1986); *Tombollo*, 342 N.W.2d at 25–26.

The record indicates that Federal terminated Blote in accordance with its bylaws. Blote argues that the decision to fire him was made when the board was improperly constituted of only four members. This is irrelevant. The board was properly composed of seven members when he was fired on April 18, 1985.

In short, Blote was a terminable at-will employee. No contractual provision altered his status. His firing was done in accordance with Federal's bylaws, and was amply justified by the facts in his own deposition: inability to work effectively with his co-workers and superiors, broken guidelines, and participation in internal strife within Federal. No question of fact presents itself on this record, and the court correctly applied the law. SDCL 15–6–56(c) states that summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Hopes v. Black Hills Power & Light Co.*, 386 N.W. 2d 490 (S.D.1986); *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968).

■ Blote's claim regarding wrongful discharge under prima facie tort theory has no validity as he was an employee at will. *Tombollo*, 342 N.W.2d at 26; *Swanger v. National Juvenile Law Center*, 714 S.W. 2d 170, 173 (Mo.App.1986). The circuit court was correct in granting summary judgment to Federal on the wrongful discharge claims.

Additionally, considering Federal's birth and life via federal charter under the auspices of the Federal Home Loan Bank Board, we note the decision of *Inglis v. Feinerman*, 701 F.2d 97 (9th Cir.1983),

---

**3.** Blote also asserts that he was given oral assurances of job security, but this claim is not substantiated by the record. Blote further argues implied covenants of good faith and fair dealing come into play and falls under the rule of *Oster-*

*kamp v. Alkota Mfg., Inc.*, 332 N.W.2d 275 (S.D. 1983), but we likewise disagree as the manual here had no detailed discharge procedures such as found in *Osterkamp.*

*cert. denied,* 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984), with its core holding that attempts to create employment rights from independent sources such as personnel manuals are void under the Federal Home Loan Bank Act (12 U.S.C. § 1421, et seq.), which authorizes dismissal of bank officers "at pleasure" of the bank (12 U.S.C. § 1432(a)) and preempts state laws. *Inglis,* 701 F.2d at 98–99. State jurisdictions seem to blend their holdings with this core ruling of the Ninth Circuit. *See Berry v. American Fed. Sav.,* 730 P.2d 905 (Colo. App.1986) (affirming a summary judgment against a savings and loan association employee); *Shepherd v. Jones,* 136 Cal.App.3d 1049, 1058, 186 Cal.Rptr. 708, 712–13 (1982) (adopting *Inglis'* interpretation of "at pleasure").

## ISSUES III. & IV.  DEFAMATION

Blote's assertions of defamation by Federal are legally untenable.

■ Federal's argument, in the unemployment compensation proceeding, that it terminated Blote for misconduct, was a privileged communication as defined by SDCL 20–11–5(2). That statute provides that malice is not inferred from publication of a communication made in any legislative or judicial proceeding, or in any other official proceeding authorized by law. In the context of judicial proceedings, we have held a communication to be privileged if it (1) was made in a judicial proceeding; (2) had some connection to the action; (3) was made to achieve the objects of the litigation; and (4) involved litigants or other participants authorized by law. *Hughes v. O'Connor,* 313 N.W.2d 463 (S.D.1981). Federal's claim of work-related misconduct fit these criteria, except that it was offered in an administrative hearing. Such hearings, however, are official proceedings covered by the statute. *See Circus Circus Hotels, Inc. v. Witherspoon,* 99 Nev. 56, 657 P.2d 101 (1983) (privilege extended to administrative hearings regarding unemployment compensation). Federal was a participant in the proceeding, and its claim was made pursuant to SDCL 61–6–14,

which denies benefits in misconduct cases. Privilege attached.

■ Similarly, Blote's defamation claim regarding "kickback" allegations is unsound. SDCL 20–11–5(3), which provides that a communication, without malice (and malice is not inferred from the communication or publication), to an interested person, by an interested person, is privileged. The communication in question here consisted of a discussion between Federal's directors and officers at a meeting within the four walls of the bank. There is no showing, by Blote, that malice was present. A specific showing of malice is required for purposes of raising a genuine issue of material fact. *Uken v. Sloat,* 296 N.W.2d 540, 543 (S.D.1980). Malice cannot be presumed. *Id.* We therefore also affirm the circuit court on the defamation issues.

Decision of the circuit court is affirmed in all respects.

WUEST, C.J., MORGAN and MILLER, JJ., concur.

SABERS, J., dissents.

SABERS, Justice (dissenting).

I dissent. In *Dare v. Montana Petroleum Marketing Co.,* 687 P.2d 1015, 1020 (Mont.1984), the Montana Supreme Court stated:

> Whether a covenant of good faith and fair dealing is implied in a particular case depends upon objective manifestations by the employer giving rise to the employee's reasonable belief that he or she has job security and will be treated fairly. *Gates [v. Life of Montana Insurance Company,* 196 Mont. 178, ——, 638 P.2d 1063, 1067 (1982) ].* The presence of such facts indicates that the term of employment has gone beyond the indefinite period contemplated in the at will employment statute, section 39–2–503, MCA, and is founded upon some more secure and objective basis. In such cases, the implied covenant protects the investment of the employee who in good faith accepts and maintains employment reasonably believing their job is secure so long as they perform their duties satisfactori-

ly. Such an employee is protected from bad faith or unfair treatment by the employer to which the employee may be subject due to the inherent inequality of bargaining power present in many employment relationships. The implied covenant seeks to strike a balance between the interests of the employer in controlling the work force and the interests of the employee in job security. *Gates,* 638 P.2d at 1066–67, 39 St.Rep. at 20.

In his special concurrence, Justice Morrison applauded the majority's effort to define the parameters of those principles that control the employment relationship and stated:

> In my opinion, section 39–2–503, MCA provides for "at will" employment where no specific term is specified. The statute refers to the term of employment but has nothing to do with obligations owed by either party to the other. In other words, even though employment may be terminated at will, if a legal obligation is breached, that breach may give rise to a separate tort action.
>
> ... The covenant of good faith and fair dealing is implicit in every employment contract irrespective of a reasonable belief regarding job security. The law imposes an absolute obligation upon employers to deal fairly and in good faith with their employees from the commencement of the employment relationship. Facts that give rise to an inference of job security in the future might help determine whether there was a breach of the covenant to deal fairly and in good faith, but are not necessary to the existence of the covenant itself.
>
> ... [T]he obligation recognized by this Court must be reconciled with the "at will" statute. I think this can easily be done. An employer, under the "at will" statute, has the right to terminate. However, if the employer violates the legal obligation to treat the employee fairly and in good faith, then a separate and independent tort action can be instituted by the injured employee against the offending employer. Damages, not reinstatement, is the remedy.

> ... There is an indication in the majority opinion that the plaintiff can only be terminated "for cause." Such a determination certainly conflicts with the "at will" statute. We must not confuse the "term of employment" with the right of the employee to be dealt with fairly and in good faith. The breach of the obligation owed by the employer may give rise to a tort action on the part of the employee, but does not convert "at will" employment to employment for a specific term.

*Dare, supra* at 1021–1022.

This court should adopt the decision in *Dare* and the analysis utilized by Justice Morrison in his special concurrence. The duty to treat an employee fairly and in good faith arises in *every* employment relationship. An "at will" employee may be terminated for reasons other than "for cause," but the duty imposed by the covenant of good faith and fair dealing requires that the employer exercise such good faith and fairness in termination decisions and proceedings. Additionally, objective manifestations by the employer which create a reasonable belief that the employee has job security absent misconduct may give rise to a stricter standard of duty for the employer. In other words, where specific expectations of treatment by the employer are reasonably and objectively based upon words or actions of the employer, these expectations may form more specific parameters of the employer's duty.

I do not believe it was the intention of the legislature in enacting the "at will" employment statute to allow employers hiring "at will" employees to operate wholly outside the accepted doctrines of contract law. This statute was also never intended to give employers immunity for actions which rise to the level of a tort.

In this case Blote was employed by First on April 1, 1971, and was continuously so employed until April 17, 1985, at which time he was terminated. Blote's initial annual salary was $9,000 with an annual bonus of $270. By January 1, 1977, Blote was promoted to assistant vice president and manager of the installment loan de-

partment with an annual salary of $19,338 together with an annual bonus of $580.14. On January 1, 1979, he was promoted to vice president and retained the designation of manager in the installment loan department at $22,850 with an annual bonus of $685.50. Blote received annual salary increases each year of his employment. At the time of his termination Blote's annual salary was $35,000. Throughout the course of Blote's employment he was neither reprimanded nor disciplined. His personnel file is barren of any admonishments. Certainly, he is entitled to be treated fairly and in good faith.

The employment manual categorizes employees as "regular employees, temporary employees, and probationary employees." It recognizes "seniority rights" and most importantly it insures employees "fair and equitable treatment in the administration of the association's policies."[1]

The manual clearly committed First to a standard in employee relations which is to be "fair and equitable." Genuine issues of material fact arise as to whether First adhered to that standard. *Osterkamp v. Alkota Manufacturing, Inc.*, 332 N.W.2d 275 (S.D.1983), is applicable. The instruction given by the trial court to the jury and approved in review by this court is instructive: "The only issue to be resolved by you is whether or not the plaintiff's discharge from his employment was in violation of defendant's own rules and regulations, and if so, whether or not plaintiff sustained any damages thereby." The law of *Osterkamp*, forcefully impacts upon this case and requires the finder of fact to determine if First violated its self-imposed standard of treating employees fairly and equitably. First prepared a resolution terminating Blote as an officer and manager, "because of his failure to perform his duties described in his own analysis of his objectives." This also creates a genuine issue of

material fact—whether or not Blote in fact failed to perform his duties.

The first question then is whether an employee with over fourteen years of unblemished employment can be terminated unfairly or in bad faith. If a covenant of good faith and fair dealing is implied in all employment contracts, or is expressed, as in this case, then the answer must be "no."

The second question is whether that employee can be terminated without cause. If we require employers to abide by the reasonable expectations of job security which they create and foster, then the answer must be "no."

The third question is whether that employee can be terminated based on a claim of cause but without any consideration of fairness or good faith or any determination by an objective fact-finder as to whether cause exists.

If, and only if, all of these questions can be answered in the affirmative can we affirm summary judgment in favor of this employer. These questions cannot and should not be affirmatively answered.[2]

---

1. I am not persuaded by the majority's claim that attempts to create employment rights from independent sources such as personnel manuals are void under the Federal Home Loan Bank Act or that such law preempts state law. Blote is a resident of the State of South Dakota and does not lose his rights just because he happens to be employed by a federally chartered bank or savings and loan association.

2. Comment, "The Status of the Wrongful Discharge Cause of Action in South Dakota," 31 S.D.L.Rev. 689 (1986).